DECISION
{¶ 1} Relator, Deerfield Manufacturing, Inc. ("relator"), commenced this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability *Page 2 
("PTD") compensation to respondent Anderson B. Taylor ("claimant") and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who considered the action on its merits and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate considered the following three issues: (1) whether the commission's reliance upon the July 20, 2006 vocational report of William T. Cody ("Cody") required the commission to deny claimant's application for PTD on grounds that advanced age is the sole cause or primary obstacle as a significant impediment to reemployment; (2) whether Cody's July 20, 2006 vocational report is internally inconsistent such that it cannot be relied upon by the commission; and (3) whether the commission abused its discretion by allegedly failing to analyze or explain the nonmedical factors.
 {¶ 3} The magistrate reviewed the evidence and determined that the commission's reliance upon Cody's report did not require it to deny the PTD application and did not constitute an abuse of discretion. Next, the magistrate determined that Cody's vocational report was not internally inconsistent and therefore constituted some evidence upon which the commission could rely. Finally, the magistrate determined the commission did not abuse its discretion with respect to the nonmedical factors in not addressing claimant's rehabilitative efforts as the record contained evidence that cardiac problems and increased pain prevented vocational rehabilitation in 2005. Thus, the magistrate recommended the court deny relator's request for a writ of mandamus.
 {¶ 4} No objections have been filed to the magistrate's decision. *Page 3 
 {¶ 5} We note that the commission stated its order was based, inter alia, on Cody's July 25, 2006 report, and did not specifically state that it relied on the July 20, 2006 report. However, all parties and the magistrate have treated the July 20, 2006 report as being part of the basis for the order, and analyzed it as such; therefore we too have treated it as such, for purposes of our independent review.
 {¶ 6} Finding no error of law or other defect in the magistrate's decision, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
 PETREE and TYACK, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on October 24, 2007 IN MANDAMUS {¶ 7} In this original action, relator, Deerfield Manufacturing, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 5 
vacate its award of permanent total disability ("PTD") compensation to respondent Anderson B. Taylor ("claimant") and to enter an order denying said compensation.
Findings of Fact: {¶ 8} 1. Claimant has sustained two industrial injuries while employed as a "die setter" for relator, a state-fund employer.
 {¶ 9} 2. The June 24, 2003 injury is allowed for "sprain of pelvis, right groin; aggravation of pre-existing arthritis of right hip; lumbosacral strain; aggravation of lumbar disc displacement at L4-5 and L5-S1; right sacroiliac joint strain; adjustment reaction-emotional/conduct," and is assigned claim number 03-380669. The earlier injury occurred on July 24, 2001. That injury is allowed for "open wound of head, nec," and is assigned claim number 01-413045.
 {¶ 10} 3. On December 2, 2005, treating physician Janalee Krick Rissover, M.D., wrote:
 I had the pleasure [of] seeing Anderson in the office today for his industrial injury. Anderson was seen in the office today for his chronic lumbar strain and disk herniation as well as depression. * * *
 We spent some time today discussing his Workers' Comp case. Anderson already has Social Security Disability and there is no way at his age and his education level that he is ever going to be able to retrain. There is also no way he can go back to heavy labor given his poor FCE this past June. At this point, I very strongly feel the patient is permanently and totally disabled and that has already been acknowledged by Social Security. The next step is permanent total disability with Workers' Comp. Given his depression and his physical restrictions I think that is very reasonable.
 {¶ 11} 4. On January 17, 2006, treating psychologist Charles M. Buhrman, Jr., Psy.D., wrote: "It is my opinion that Anderson Taylor is permanently and totally disabled, *Page 6 
given the combination of his mental condition marked by depression, anxiety, agitation and anger secondary to his work-related injury, along with the physical impairment."
 {¶ 12} 5. On January 30, 2006, claimant filed an application for PTD compensation. In support, claimant submitted the reports from Drs. Rissover and Buhrman.
 {¶ 13} 6. On April 10, 2006, at relator's request, claimant was examined by Steven S. Wunder, M.D., who reported:
 Mr. Taylor could not return to his former position of employment as he described it to me. His restrictions would place him in sedentary ranges. He has tested out in functional capacity testing in sedentary ranges on several occasions.
 Considering only the allowed physical conditions, Mr. Taylor can engage in sustained remunerative employment.
 Considering only the allowed physical conditions, Mr. Taylor has reached maximum medical improvement.
 Treatment at this point in time would be considered maintenance. I think 4 office visits per year would be considered appropriate to monitor his situation.
 {¶ 14} 7. On April 11, 2006, at the commission's request, claimant was examined by psychiatrist Donald L. Brown, M.D., who wrote:
 In my opinion, Mr. Taylor has reached [maximum medical improvement] with respect to his previously allowed adjustment reaction-emotional / conduct and it can be considered permanent. Utilizing the Fifth Edition of the AMA Guides to the Evaluation of Permanent Impairment, I'd rate him as having a Class II level of impairment. This is a mild level of impairment.
 Referencing the percentages, I'd rate his level of impairment at 20%. *Page 7 
 {¶ 15} 8. On April 11, 2006, Dr. Brown completed an occupational activity assessment" form that is subcaptioned "Mental Behavioral Examination." On the form, Dr. Brown indicated by checkmark that "[t]his injured worker has no work limitations."
 {¶ 16} 9. On May 28, 2006, at the commission's request, claimant was examined by James R. Donovan, Jr., M.D. Dr. Donovan did not evaluate the allowed psychiatric condition. He reported:
 PHYSICAL EXAMINATION: Shows that with respect to his allowed conditions of claim allowance 01-413045, open wound of head has completely healed without sequelae and for this condition he would have 0 degree of permanent partial impairment. With respect to claim allowance 03-380669, these conditions are under lumbosacral examination as well as right hip examination. With respect to his right hip, it is noted that he ambulates very slowly without cane, crutch, or walker. His right hip flexion is 30 degrees, extension 20 degrees, abduction 20 degrees, adduction 10 degrees, internal rotation 9 degrees, and external rotation 19 degrees. His lumbosacral examination shows that he has tenderness to palpation of the right sacral iliac joint. Lumbrosacral [sic] flexion was reduced to 45 degrees, with abduction reduced to 20 degrees bilaterally. In his lower extremity his deep tendon reflexes are zero at his knee or his patella, and he does have reduced gross sensation in the lower extremities, consistent with a radiculopathy; proprioception in the lower extremity is within normal limits.
With respect to the questions asks [sic] to this examiner:
 1. Has the injured worker reached maximum medical improvement with regard to each specified allowed condition? I do believe that both his hip and back have reached maximum medical improvement, as there is no additional diagnostic or therapeutic modality likely to produce a significant improvement in his status at this time. In terms of the estimated percentage whole person impairment, allowing for each allowed condition for the sprain pelvis/right groin, aggravation of pre-existing arthritis of right hip utilizing Table *Page 8 
17-9, p. 537. I find that Mr. Taylor has a 8% of permanent partial impairment. For the lumbar disc displacement L4-5 and L5-S1, right sacral iliac joint strain and lumbrosacral [sic] strain, I find that Mr. Taylor has 13% impairment of the whole person based upon his being in lumbar category III of Table 15-3, p. 384, in the 5th Edition in the AMA Guides. Summing the two calculations gives Mr. Taylor a total permanent partial impairment of 20% utilizing the combined values Table on p. 604 of the 5th Edition in the AMA Guides. Enclosed is a Physical Strength Rating.
 {¶ 17} 10. Dr. Donovan also completed the physical strength rating form on which he indicated that claimant is capable of sedentary work.
 {¶ 18} 11. In further support of his PTD application, claimant submitted a report dated July 20, 2006, from William T. Cody, a vocational expert. In his report, Cody states:
 Mr. Taylor, at the age of sixty-two years would be unable to adapt to a new kind of work activity. He has a significant level of pain, manual trade work history, a limited level of education, low demonstrated academic ability, and physical and psychological limitations as reflected in the record reviewed. Under these circumstances he could not be expected to adequately adapt to the new tools, tasks, procedures, and rules involved in performing a new type of work activity, a type of work that he has not performed in the past. This holds true even for unskilled work. The Industrial Commission defines the age of sixty-two years as closely approaching advanced age. Being of this age presents significant obstacles to ones' ability to adjust to a new kind of work activity. When a significant level of pain is combined with[:] physical restrictions, psychological impairments, limited education, low academic ability, and a manual trade work history, they serve as contributing factors, along with age, to an inability to make vocational adjustments.
 Therefore, in the opinion of this vocational expert, Anderson Taylor is permanently and totally occupationally disabled. That is, there are no jobs in the local or national economies that he is able to perform. This conclusion was reached considering his age, limited education, low academic ability, *Page 9 
manual trade work history, and the physical and emotional limitations that he has as a result of his allowed injuries, claim numbers 03-380669 and 01-413045.
 Mr. Taylor's inability to work within a schedule and his inability to regularly attend any kind of activity, as discussed above, would preclude him from performing part time work in a competitive situation. Assuming that part time work is available, it must be performed as scheduled. Mr. Taylor indicated that he cannot perform scheduled activities on a reliable basis. This statement is consistent with the medical information reviewed.
 The point should be made that the primary obstacle preventing Mr. Taylor from returning to work is not his closely approaching advanced age. The major barrier to him returning to work is the physical limitations emanating from his work injury. If not for his work injury he could still be working.
 {¶ 19} 12. On July 20, 2006, at relator's request, vocational expert Maria E. Georgiafandis provided a vocational evaluation, stating:
 In addition to the job titles located through OASYS and the newspaper, it is my experience as a Vocational Rehabilitation Case Manager that individuals who require sedentary jobs are able to work as "Greeters" in stores such as Wal-Mart, Target etc. I have also placed individuals who are comfortable driving small cars in positions with Pathology Labs. This type of job requires picking up items such as x-rays, blood samples etc. and transporting them to and from a doctor's office and laboratories. Although Mr. Taylor has stated on his PTD Application that he is not comfortable driving, none of the reports that were reviewed list any restrictions for driving. There are also several security companies that have employees that monitor home or company security systems. These jobs involve primarily sitting and making phone calls to the appropriate parties.
 A great majority of employers require High School or GED. As Mr. Taylor has a listed IQ of 106, according to Dr. Howard, he should be able to acquire a GED with the assistance of a GED instructor. *Page 10 
 Taking all of the above information into consideration, it is my opinion that Mr. Taylor does possess the ability to perform sustained remunerative employment primarily in the area of assembly and sedentary benchwork. I would recommend that a local job developer work with Mr. Taylor. They would already have established relationships with local employers who are comfortable hiring individuals with disabilities.
 {¶ 20} 13. On July 25, 2006, Cody authored a response to the July 20, 2006 vocational evaluation. Cody states:
 Ms. Georgiafandis inappropriately assumes that Mr. Taylor is capable of obtaining a GED because he has an average IQ. Having a Master's degree, Ms. Georgiafandis should know that intelligence and academic achievement or [sic] not necessarily correlated. She hedges on this a bit by saying that Mr. Taylor "should be able to acquire a GED with the assistance of a GED instructor" (emphasis added). I tested his academic ability at less than the high school level.
 Ms. Georgiafandis uses a computer program, OASYS, to develop jobs that match Mr. Taylor's acquired skills. This program is typically used to generate job possibilities to be used to investigate employment and not as a method to find jobs that an injured worker can definitely perform. The seven job titles that she identifies of the thirty-nine that the system came up with have either a "good to moderate" or a "fair" degree of transferability. Therefore, Mr. Taylor may or may not have the ability to adjust to these new jobs.
 Ms. Georgiafandis, as discussed above, inappropriately addresses Mr. Taylor's work history and level of educational attainment, two of his relevant vocational factors. She does not at all address how his closely approaching advanced age of sixty-two years affects his ability to adjust to a new kind of work. Ms. Georgiafandis does not list Mr. Taylor's age or his date of birth anywhere in her report.
 Ms. Georgiafandis' evaluation does not change my previously stated opinion that Mr. Taylor is permanently and totally occupationally disabled as a result of his age, limited education, low academic ability, manual trade work history, and the physical and emotional limitations that he has as a *Page 11 
result of his allowed injuries, claim numbers 03-380669 and 01-413045.
 {¶ 21} 14. July 27, 2006, Georgiafandis authored a response to Cody's July 25, 2006 report. Georgiafandis states:
 Mr. Cody correctly points out that Mr. Taylor only has a sixth grade education. As a result of this Mr. Cody feels that he would not be able to obtain a GED. Mr. Taylor's educational level did not hinder him with regard to learning the skill of die setting and performing this occupation for a great many years. Again I must respect the results of the recent testing provided by Lee Howard, PhD which indicates that Mr. Taylor has a current IQ of 106. This represents his aptitude, not his level of education. I would not wish to sell Mr. Taylor short and assume that he is not capable of studying for and achieving his GED especially with the assistance of a GED instructor.
 {¶ 22} 15. Following an August 16, 2006 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation. The SHO's order states:
 Permanent and total disability compensation is hereby awarded from 04/10/2006, the date of Dr. Wunder's report supporting permanent total disability * * *
 The injured worker sustained two injuries while employed with this employer. He sustained an injury on 07/24/2001 when he struck his head on a part. That claim has been recognized for open wound of the head. On 06/24/2003, the injured worker sustained an injury when he slid off a trimmer and pulled his groin muscle. That claim was subsequently amended to include the allowed conditions, as listed above. The injured worker last worked in 2003.
 The injured worker was examined at the request of the Industrial Commission by Dr. J. Donovan on 05/28/2006. Dr. Donovan reviewed medical evidence on file and examined the injured worker. Dr. Donovan indicated that the injured worker had reached maximum medical improvement for each of the conditions that are recognized in these two claims. On the Physical Strength Rating Form that is attached to his report, Dr. Donovan opined that the injured worker would be able to engage in sedentary work activity. *Page 12 
 Sedentary work activity is defined as exerting up to ten pounds of force occasionally and/or a negligible amount of force frequently. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
 The employer submitted a report from an examination of the injured worker by Dr. S. Wunder on 04/10/2006. Dr. Wunder also performed an examination of the injured worker. Dr. Wunder concluded that the injured worker was unable to return to his former position of employment, but could return to work in a sedentary range.
 The Staff Hearing Officer finds that the injured worker has reached maximum medical improvement for each of the conditions that are recognized in these two claims. The Staff Hearing Officer further finds that the injured worker retains the physical functional capacity to perform employment activities which are sedentary in nature.
 The injured worker submitted a vocational report from Mr. W. Cody. Mr. Cody reported that the injured worker had worked as a die setter from 1966 until this injury occurred in 2003. According to Mr. Cody, this position is a skilled job performed at the very heavy level of physical demand. Mr. Cody indicated that the injured worker had acquired tool usage and equipment operation skills through the performance of his job which would transfer to medium level jobs in the same field. Mr. Cody further indicated that the injured worker has no experience in or skills that transfer to work performed at the sedentary level of physical demand.
 The Staff Hearing Officer finds that the injured worker is 62 years of age and attended school through the sixth grade. The injured worker has not obtained a G.E.D. The Staff Hearing Officer finds that the injured worker's previous work experience consists of 37 years as a die setter. The Staff Hearing Officer finds that the injured worker's low level of education, lack of transferable skills and age of 62 are all negative factors which would preclude the injured worker from returning to employment activity or engaging in retraining which may be necessary for a return to employment activity.
 Therefore based upon the reports from Dr. J. Donovan and Dr. S. Wunder, as well as the report from vocational expert *Page 13 
W. Cody, the Staff Hearing Officer finds that the injured worker is permanently and totally disabled and unable to engage in any type of sustained remunerative activity. The Application for Permanent Total Disability Compensation filed on 01/30/2006 is granted.
 * * *
 This order is based upon the medical reports from Dr. J. Donovan dated 05/28/2006, Dr. S. Wunder dated 04/10/2006 and the vocational report from Mr. W. Cody dated 07/25/2006.
 {¶ 23} 16. On September 1, 2006, relator moved for reconsideration of the SHO's order of August 16, 2006.
 {¶ 24} 17. On September 30, 2006, the three-member commission mailed an order denying reconsideration.
 {¶ 25} 18. The record contains a vocational rehabilitation closure report from the Ohio Bureau of Workers' Compensation ("bureau") dated December 15, 2003. The closure report states:
 * * * Mr. Taylor completed a Functional Capacity Evaluation (FCE) on 11/4/2003. The results of the FCE indicated Mr. Taylor demonstrated work ability at the sedentary physical demand level. The report also documented concerns with Mr. Taylor's cardiac functioning. Mr. Taylor had additional cardiac testing completed under the direction of Natalie Turchin, MD. After reviewing the results of a cardiac stress test, Dr. Turchin provided a release for Mr. Taylor to participate in a work conditioning program. However, Mr. Taylor was evaluated by an Independent Medical Examination (IME) on 11/19/2003. The IME reported that Mr. Taylor was not a candidate for a vocational rehabilitation plan at this time. Instead, Mr. Taylor should have additional diagnostic testing and treatment. The POR reviewed the IME report and agreed with the finding. Mr. Taylor indicated that he would follow the direction of the IME report and the POR recommendation. A staffing was held with the MCO/BWC-DMC and it was agreed that based on the medical reports *Page 14 
 Mr. Taylor was not able to participate in a vocational rehabilitation plan due to medical instability. This vocational rehabilitation file will be closed. Injured worker is medically unstable to participate in rehabilitation services per the MCO.
 {¶ 26} 19. The record also contains a bureau vocational rehabilitation closure report dated April 28, 2005, which states in part:
 Mr. Taylor was referred for vocational rehab case management, 04/19/2005. The IW [injured worker] was contacted, 04/19/2005 and an initial interview was scheduled for, 04/22/2005. He wa[s] cooperative in answering questions. The IW's wife was with him in the interview as she stated she drives him as he is unable to drive due to increased pain. She was also there to help with the interview as the IW is hard of hearing, however, he did respond to most of what I said or asked. * * * The IW stated he does very little around the house due to increased pain. He stated a motivation to work but was uncertain of a job he would be able to perform. The IW signed the form required for voc rehab. After the initial interview his wife called to state the IW had decided he did not think he could participate. I also talked with the IW and he informed me that he was no longer interested in voc rehab at this time due to his increased pain. This voc rehab file is being closed as the IW is no longer interested in services.
 {¶ 27} 20. On February 12, 2007, relator, Deerfield Manufacturing, Inc., filed this mandamus action.
Conclusions of Law: {¶ 28} Several issues are presented: (1) whether the commission's reliance upon Cody's July 20, 2006 report required it to deny the application on grounds that advanced age is the sole cause or primary obstacle which serves as a significant impediment to reemployment; (2) whether the Cody vocational reports are internally inconsistent such *Page 15 
that they cannot be relied upon by the commission; and (3) whether the commission abused its discretion by allegedly failing to analyze or explain the nonmedical factors.
 {¶ 29} The magistrate finds: (1) the commission's reliance upon the Cody report did not require it to deny the PTD application; (2) the Cody vocational reports are not internally inconsistent; and (3) the commission did not abuse its discretion with respect to the nonmedical factors.
 {¶ 30} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 31} Turning to the first issue, Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications.
 {¶ 32} Ohio Adm. Code 4121-3-34(D)(1)(g) states:
 If, after hearing, the adjudicator determines that there is appropriate evidence which indicates the injured worker's age is the sole cause or primary obstacle which serves as a significant impediment to reemployment, permanent total disability compensation shall be denied. However, a decision based upon age must always involve a case-by-case analysis. The injured worker's age should also be considered in conjunction with other relevant and appropriate aspects of the injured worker's nonmedical profile.
 {¶ 33} The SHO's order of August 16, 2006 states reliance upon the July 25, 2006 Cody report. The SHO's order also discusses the Cody report in the following paragraph:
 The injured worker submitted a vocational report from Mr. W. Cody. Mr. Cody reported that the injured worker had worked as a die setter from 1966 until this injury occurred in 2003. According to Mr. Cody, this position is a skilled job performed at the very heavy level of physical demand. Mr. Cody *Page 16 
indicated that the injured worker had acquired tool usage and equipment operation skills through the performance of his job which would transfer to medium level jobs in the same field. Mr. Cody further indicated that the injured worker has no experience in or skills that transfer to work performed at the sedentary level of physical demand.
 {¶ 34} Relator begins its argument by asserting that "Mr. Cody states respondent's advanced age of 62 renders him unable to adapt to any re-employment." (Relator's brief at 6.) Cody makes no such statement.
 {¶ 35} What Cody says is "Mr. Taylor, at the age of sixty-two years would be unable to adapt to a new kind of work activity." In concluding that claimant "could not be expected to adequately adapt to the new tools, tasks, procedures, and rules," Cody considers factors other than age. Relator's misinterpretation of Cody's statement about age cannot serve relator's argument here.
 {¶ 36} Relator further points to Cody's statement that "[b]eing of this age presents significant obstacles to ones' ability to adjust to a new kind of work activity." That statement, however, cannot be interpreted to support relator's argument that Cody's report compels the conclusion that "age is the sole cause or primary obstacle which serves as a significant impediment to reemployment" to quote the words of the commission's rule.
 {¶ 37} Moreover, that the commission determined that age 62 presents a negative factor in the analysis of the nonmedical factors does not equate to a determination that age is the sole cause or primary obstacle.
 {¶ 38} In short, the commission's reliance on the Cody report and the commission's analysis of age was not an abuse of discretion. *Page 17 
 {¶ 39} Turning to the second issue, a medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445; State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582. Presumably, a vocational report can also be so internally inconsistent that it cannot be some evidence.
 {¶ 40} In his July 20, 2006 report, Cody states in the fourth to the last paragraph that "age presents significant obstacles." In the last paragraph, Cody states that "the primary obstacle" preventing a return to work "is not his closely approaching advanced age." Relator contends that these two statements are contradictory. They are not contradictory.
 {¶ 41} As the commission appropriately points out here, an obstacle said to be "significant" is not an obstacle said to be "primary."
 {¶ 42} In short, Cody's reports are not internally inconsistent.
 {¶ 43} The third issue is whether the commission abused its discretion by allegedly failing to analyze or explain the nonmedical factors. In that regard, relator claims that it was an abuse of discretion for the commission to not address claimant's rehabilitation efforts or lack thereof. The magistrate disagrees.
 {¶ 44} According to his PTD application, claimant was last employed on June 24, 2003. The commission awarded PTD compensation effective April 10, 2006. Hence, relator is in effect questioning claimant's efforts at rehabilitation during this almost three-year period.
 {¶ 45} About six months after claimant's last date of employment, the bureau issued a closure report stating that claimant "is medically unstable to participate in *Page 18 
rehabilitation services" due to a cardiac problem. About 17 months later, the bureau issued another closure report indicating that claimant "decided he did not think he could participate" due to his claim of increased pain. The file was closed with the declaration that claimant "is no longer interested in services."
 {¶ 46} Thus, there is evidence that a cardiac problem prevented vocational rehabilitation in December 2003, and there is evidence that increased pain prevented vocational rehabilitation in April 2005. Claimant was declared to be permanently totally disabled effective April 10, 2006, approximately ten months after his second closure report.
 {¶ 47} It is difficult to see how this evidence could be viewed by the commission to support a finding that claimant had no justification for not participating in vocational rehabilitation. Thus, it is difficult to see how this evidence can be used to justify reopening the PTD adjudication. Relator has offered no evidence showing that claimant was capable of undergoing vocational rehabilitation during the less than three-year period between his last date of employment and his PTD award.
 {¶ 48} Under such circumstances, it would be futile to remand this matter to the commission to simply consider evidence that indicates that claimant was justified in refusing to participate in vocational rehabilitation. See State ex rel. Spinks v. Indus. Comm., Franklin App. No. 04AP-1230, 2005-Ohio-4677 (bureau informed Mr. Spinks that he would need a release from a cardiologist if he wished to obtain rehabilitation services).
 {¶ 49} In short, the commission did not abuse its discretion in failing to address rehabilitation efforts. *Page 19 
 {¶ 50} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 KENNETH W. MACKE, MAGISTRATE *Page 1