[Cite as *State ex rel. Columbus Distrib. Co. v. Reeves*, 2023-Ohio-898.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. The Columbus Distributing     :
Company,
                                            :
            Relator,
                                            :
v.                                                          No.  21AP-399
                                            :
Frank Reeves et al.,                                       (REGULAR CALENDAR)
                                            :
            Respondents.
                                            :

                                            :

D E C I S I O N

Rendered on March 21, 2023

*M. Soto Law Office, LLC*, and *Michael Soto*, for relator.

*Plevin & Gallucci*, and *Rachel Wenning*, for respondent Frank
Reeves.

*Dave Yost*, Attorney General, and *Cindy Albrecht*, for
respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

JAMISON, J.

{¶ 1}  Relator, the Columbus Distributing Company ("CDC"), brings as an original
action this complaint in mandamus seeking a writ ordering respondent, Industrial
Commission of Ohio ("commission"), to vacate orders granting permanent partial disability
("PPD") and permanent total disability ("PTD") awards to respondent, Frank Reeves
("Reeves").

{¶ 2}  On October 21, 2004, Reeves was working for CDC as a route salesman
when he injured his back delivering cases of beer with a dolly.  A worker's compensation

claim was filed, and Reeves was awarded temporary total disability ("TTD") through March 31, 2005, when he returned to regular duties without restriction.

{¶ 3} Reeves was off work due to back pain from November 1, 2006 to March 30, 2007. In June 2007, Reeves reinjured his back while delivering beverages and returned to work without any restrictions in October 2007. On October 21, 2013, Reeves was injured loading cases of beer onto his truck and received TTD for his injury. Reeves did not return to work and was granted Social Security Disability payments retroactive to October 21, 2013. On November 3, 2015, CDC terminated Reeves.

{¶ 4} On August 10, 2020, Reeves was awarded PPD of 16 percent, and on March 4, 2021, Reeves was awarded PTD. After the commission affirmed the award through the administrative appeal process, CDC brought this action in mandamus.

{¶ 5} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that the commission did not abuse its discretion because its orders awarding Reeves 16 percent PPD and PTD are supported by some evidence. Thus, the magistrate recommends this court deny CDC's request for a writ of mandamus.

{¶ 6} CDC has filed objections to the magistrate's decision, arguing that the magistrate improperly relied on a doctor's report and simply ignored other contradictory findings and that Reeves was not working for reasons unrelated to the allowed conditions. We must take an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 7} For this court to issue the requested writ of mandamus, Reeves must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d

56 (1987). The commission "has substantial leeway in both interpreting and drawing inferences from the evidence before it." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34. "Generally, the commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive." *State ex rel. Washington v. Indus. Comm.*, 10th Dist. No. 14AP-445, 2015-Ohio-3897, ¶ 11.

{¶ 8}  In their objections, CDC essentially repeats the same arguments considered and rejected by the magistrate.  As long as some medical evidence supports the commission's findings that Reeves was permanently and totally disabled for the allowed reasons, the findings will not be disturbed.  *State ex rel. Pritt v. Indus Comm.*, 10th Dist. No. 17AP-98, 2018-Ohio-1066, ¶ 13.  Even if there is "conflicting evidence before the commission, this court does not re-weigh the evidence in mandamus." *State ex rel. Cincinnati, Inc. v. Indus. Comm.*, 10th Dist. No. 04AP-241, 2005-Ohio-516, ¶ 6.

{¶ 9}  Upon an independent review of the magistrate's decision and an independent review of the file, we find that the magistrate has properly applied the law to the pertinent facts.  Therefore, the objections to the magistrate's decision are overruled and this court adopts the magistrate's decision as its own, including the findings of fact and conclusions of law.  The requested writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

DORRIAN and MENTEL, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. The Columbus Distributing Company, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  21AP-399 |
| | : | |
| Frank Reeves et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | | |

_____

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 25, 2022
_____

*M. Soto Law Office, LLC*, and *Michael Soto*, for relator.

*Plevin & Gallucci*, and *Rachel Wenning*, for respondent Frank Reeves.

*Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.
_____

IN MANDAMUS

{¶ 10} Relator, The Columbus Distributing Company ("CDC"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its decisions denying reconsideration of two orders issued by commission staff hearing officers ("SHO").  The first granted 16 percent permanent partial disability ("PPD") to the

injured worker, respondent Frank Reeves, and the second granted Reeves permanent total disability compensation ("PTD").

Findings of Fact:

{¶ 11} 1. Reeves sustained an injury on October 21, 2004 in the course of and arising out of his employment with relator CDC. (Stip. at 2.) CDC is a beverage distribution business, and Reeves worked as a route salesman delivering cases of beer and other beverages. On the date of the injury, Reeves was pushing a dolly when the load tipped, causing him to reach for the tipping cases and injure his back.

{¶ 12} 2. Reeves was seen at Mount Carmel East Emergency Room on October 21, 2004. (Stip. at 1.) He filed his First Report of Injury, Occupational Disease or Death on November 1, 2004. (Stip. at 2.)

{¶ 13} 3. CDC's third-party administrator certified allowance of the claim for "lumbar strain/sprain" on November 11, 2004. (Stip. at 12.) CDC paid Reeves temporary total disability ("TTD") without protest through March 31, 2005. (Compl. at ¶ 6.) Reeves thereafter returned to work without restrictions. (Stip. at 41, 50-58.)

{¶ 14} 4. Reeves was again off work due to back pain and on November 27, 2006, William Fitz, M.D., assessed an aggravation of a L4-5 disc protrusion and recommended a further MRI. (Stip. at 59, 61, 64.) Subsequent MRI confirmed the L4-5 disc protrusion. Dr. Fitz recommended epidural steroid injections.

{¶ 15} 5. The reoccurrence of back pain caused Reeves to undergo further testing and treatment. CDC's third-party administrator approved amendment of Reeves' claim to allow "L4-5 Disc Protrusion based on the enclosed MRI findings and C9 request." (Dec. 19, 2006 letter from CompManagement, Inc. to Ohio Bureau of Workers' Compensation ("BWC") Columbus service office, Stip. at 66.)     6. After administration of two epidural steroid injections, Reeves improved, and a Functional Capacity Evaluation conducted on March 30, 2007 confirmed that he could return to work. (Stip. at 73-80.)

{¶ 16} 7. By June 2007, Reeves was off work again due to back pain caused by renewed work activity, and Dr. Fitz recommended more epidural steroid injections which Reeves received prior to returning to work in November 2007 without restrictions. (Stip. at 94, 103-04.)

{¶ 17} 8. The stipulated record in this mandamus action contains no medical reports or administrative records relating to Reeves' claims between his return to work in late 2007 and an emergency room visit at Riverside Methodist Hospital on October 21, 2013, in which Reeves received treatment for back pain. (Stip. at 105-07.)

{¶ 18} 9. Reeves filed an employee report of incident and injury on October 24, 2013 with his employer indicating that he had suffered injury while twisting his back to load cases from his truck to a dolly. (Stip. at 109.) Dr. Fitz examined Reeves again on November 18, 2013 and reviewed records of the recent emergency room visit and MRI, and recommended further epidural steroid injections. (Stip. at 119.)

{¶ 19} 10. David Rudy, M.D., became Reeves' primary physician of record, and his initial assessment largely deferred to Dr. Fitz's previous observations and conclusions. (Stip. at 121.) Dr. Rudy completed a Medco-14 form dated December 27, 2013 certifying Reeves temporarily and totally disabled for the period from December 27, 2013 to January 3, 2014. (Stip. at 134-35.)

{¶ 20} 11. CDC moved on September 25, 2014 to request termination of Reeves' TTD on the basis of maximum medical improvement ("MMI"). (Stip. at 209.)

{¶ 21} 12. The commission terminated TTD on November 12, 2014 pursuant to a district hearing officer ("DHO") order. (Stip. at 230-31.) Subsequent appeals by both parties were denied. (Stip. at 232-35.)

{¶ 22} 13. Reeves was granted Social Security Disability payments ("SSDI") on December 17, 2014, retroactive to October 21, 2013. The recognized condition was "disorders of back – discogenic & degenerative." (Stip. at 967.)

{¶ 23} 14. CDC terminated Reeves' employment effective November 3, 2015, pursuant to a collective bargaining agreement allowing such action by the employer after an 18-month leave of absence by the employee. (Compl. at ¶ 2, 10; Stip. at 258-60.)

{¶ 24} 15. Reeves filed on February 13, 2018 a motion to add Major Depressive Disorder to his allowed conditions. (Stip. at 283.) A DHO granted the motion by order mailed October 5, 2018. (Stip. at 343.) An SHO upheld the determination by order mailed December 7, 2018, and the commission refused CDC's appeal. (Stip. at 346.) CDC then

pursued a right-to-participate action in the Franklin County Court of Common Pleas. (Stip. at 340.)

{¶ 25} A magistrate of the court of common pleas heard the matter in a bench trial and rendered a decision finding that Reeves had not met his burden of proof: "The Plaintiff has not shown that he suffers from a major depressive disorder and as such he cannot show that his major depressive disorder was proximately caused by the lumbar strain/sprain and L4-5 disk protrusion allowed in his claim. Hence, the Plaintiff is not entitled to participate in the workers' compensation fund for the alleged additional claim of major depressive disorder." *Reeves v. Columbus Distributing Co.*, Franklin C.P. No. 19-CVD-1819 (May 17, 2021 Mag. Decision at 19). The trial court adopted the magistrate's decision by entry filed June 7, 2021.

{¶ 26} 16. Reeves filed an application for permanent partial disability ("PPD") on February 4, 2019. (Stip. at 306-09.)

{¶ 27} 17. Reeves underwent an independent medical evaluation by John Cunningham, M.D., on behalf of the BWC. Dr. Cunningham issued a report dated June 4, 2019 concluding that Reeves qualified for PPD of 13 percent with an additional 3 percent based on discomfort, symptomology, and difficulty sitting. (Stip. at 553-55.)

{¶ 28} 18. BWC issued an order awarding 16 percent PPD based on Dr. Cunningham's examination to which CDC objected. (Stip. at 376-77.)

{¶ 29} 19. Dr. Cunningham concluded in his assessment of PPD as follows:

> He has been offered a low back surgical fusion, which he has declined. He has marked low back limitation of motion with radicular symptoms, which temporarily respond to episodic epidural steroid injections. He is very uncomfortable, and can only sit for short periods of time in certain positions.
>
> The FROI-1 in regard to this claim is reviewed, as is the original low back MRI report of 11/27/06, which showed a broad-based disc protrusion at L4-5. He also had a tear of the annulus at that level on this study. Multiple treatment records from early in this claim are reviewed. He has indeed had multiple epidural steroid injections, according to these records. Dr. Meily, a neurosurgeon, stated that there was no change in appearance from the 2005 MRI as compared to a 2013 MRI at the L4-5 level.

According to the AMA Guidelines, Fifth Edition, this individual falls in DRE Lumbar Category III at the upper end of that category. This is an individual who clearly has active, ongoing radicular symptoms with marked limitation of motion, but I could detect no objective medical record evidence of loss of motion segment integrity. Therefore, this individual is in DRE Lumbar Category III. Because of his degree of discomfort he is at the maximum impairment from Category III of 13%, but his difficulty with sitting and his non-exaggerated symptomology which are corroborated by physical examination, in my medical opinion, I feel that this individual has a 16% whole person impairment, which is 3% above the maximum impairment rating of DRE Lumbar Category III, but below the DRE Category IV lumbar impairment rating under Table 15-3, page 384. This 16% whole person permanent and partial impairment includes his subjective complaints, his physical examination findings, the AMA Guidelines, Fifth Edition, the medical records available for review and the claim allowances of "disc protrusion, L4-L5; sprain lumbar region L4-L5." The conventional impairment derived from the Spine Chapter of the AMA Guidelines, Fifth Edition, is adequate to account for this individual's impairment. These statements are made with all reasonable medical probability and certainty.

(Stip. at 554-55.)

{¶ 30} 20. Orin L. Hall, M.D., examined Reeves on August 20, 2019 at Reeves' request. (Stip. at 560-61.) Dr. Hall reached the following conclusion awarding a 20 percent PPD assessment:

For the conditions Lumbar sprain and L4-5 disc protrusion, *The 5th Edition of the AMA Guides to the Evaluation of Permanent Impairment*, was used.

According to table 15-3 on Page 384, this is a DRE Lumbar category IV impairment for the developmental fusion that has occurred at the lumbar spine based on the physical exam findings. **This is an 20% whole person impairment for Frank Reeves.**

The above analysis is based upon the available information at this time including the history given by the examinee, the medical records and test provided, and the results of the physical findings. It is assumed that the information provided to me is correct. If more information becomes available at a

later date, an additional report may be requested. Such information may or may not change the opinions rendered in this evaluation.

(Emphasis sic.) (Stip. at 561.)

{¶ 31} 21. Paul Freedman, M.D., examined Reeves on August 13, 2019. He reviewed the pertinent records and reached the following conclusions regarding partial disability:

> [One] Have either or both physical conditions recognized in the claim resolved?
>
> The current objective clinical exam findings support no evidence of any lumbar ligament injury (sprain) still being present. This is consistent with the *ODG Treatment Guidelines* of 6-12 weeks of care being required for a sprain lumbar injury. This has been long exceeded in this nearly 15-year old claim.
>
> Furthermore, the claimant has a normal objective neurologic exam with no L4-5 sensory loss or motor weakness. This is consistent with the L4-5 disc protrusion having clinically resolved. This is consistent with the *ODG Treatment Guidelines* of 6-12 months for the allowed condition. This is also consistent with the claimant not requiring any treatment for the allowed conditions after 2007 for 6 years before further treatment of any LBP was required. In addition, the current treatment of LBP is for non-allowed conditions of multi-level lumbar spondylosis including facet arthritis and degenerative disc disease. Therefore, the medical evidence supports that both of the allowed physical conditions have resolved.
>
> [Two] State within the realm of reasonable medical probability whether Mr. Reeves' current physical clinical presentation is due primarily to the natural deterioration of tissue, an organ or other part of the body. Are there other factors, medical or otherwise, affecting Mr. Reeves' clinical presentation?
>
> The claimant's present lumbar spine symptoms and objective findings relate to the progressive deterioration of lumbar spondylosis. This specifically includes multi-level degenerative disc disease (DDD) as well as multi-level facet arthritis.
>
> This is supported by the current objective exam findings, the lack of treatment for the allowed conditions since 2007, and was even specifically noted by Dr. Mosley on the 4/23/15

evaluation where Dr. Mosely concluded that the claimant's LBP pain was primarily due to arthritis and facet degenerative disease.

No specific evidence of any ligament injuries (lumbar sprain) or specific focal deficits for any L4-5 disc protrusion were clinically present. As a result the current complaints and objective exam findings relate instead to the progressive deterioration of non-work-related lumbar spondylosis.

[Three] Under the AMA Guidelines, Fifth Edition, rate permanent partial impairment, to the body as to a whole, solely considering the physical conditions recognized in the claim. Please explain the basis of your opinion, including AMA Guideline text, Tables and/or Figures upon which you relied to arrive at your impairment rating.

The allowed physical conditions are clinically resolved based on the current objective exam findings. In addition, the claimant has not radiculopathy symptoms or exam findings specific to the L4-5 disc protrusion level. As a result, the impairment for the allowed physical conditions is DRE Lumbar Spine Category I = 0% WPI.

In addition, the claimant has chronic pain mainly related to the multi-level lumbar spondylosis (non-allowed) and a minimal degree to the L4-5 level. Therefore, a discretionary 1-3% is permitted for pain. In this case only 1% is justified as the remainder relates to non-allowed conditions.

In summary, the total impairment sustained from the 10/21/2004 work injury = **1% WPI.**

(Emphasis sic.) (Stip. at 563-65.)

{¶ 32} 22. A DHO held a hearing on CDC's appeal on February 24, 2020. (Stip. at 450.) The DHO reviewed and considered all evidence and affirmed the 16 percent award based on Dr. Cunningham's assessment. An SHO heard CDC's further appeal on August 10, 2020 and upheld the 16 percent award, again based upon Dr. Cunningham's examination. (Stip. at 517.) The commission refused CDC's request for reconsideration.

{¶ 33} 23. Reeves applied for PTD compensation on March 24, 2020. (Stip. at 491.) Reeves supported the application with a report from Charles May, D.O., dated February 21, 2020. (Stip. at 495.) Dr. May reported the following conclusions:

> On physical examination, Mr. Reeves is 56 years old. Height 6 foot with 222 pounds, BMI 32, blood pressure 138.82. He was alert and oriented to person, time, and place. He was in no acute distress. He is not suffering from hallucination or delusions. He stands with a list to the left. There appears to be a functional thoracolumbar scoliosis with a large right lumbar prominence due to spasm. There is some straightening of the lower lumbar lordosis. He can actively flex the lumbar spine to 15 degrees and extend to neutral. Right and left lateral flexion are accomplished to 10 degrees. Facet loading was positive. There were large sacroiliac dimples bilaterally although there was no sacroiliac tenderness and Faber's was negative to each sacroiliac joint. There were multiple low back ulcerations on both the right and left side of the spine and lower lumbar area which the claimant states is due to his rubbing his low back to help relieve low back pain. Straight leg raising is positive at 60 degrees on the right in a sitting position and 70 degrees on the left in a sitting position. Deep tendon reflexes were trace right patella and absent left patella. Achilles reflex was absent bilaterally. His gait was antalgic without ambulatory aids.
>
> He was unable to toe walk on the left. He was unable to heel walk bilaterally. There was no atrophy or motor loss noted in either lower extremity. There was a sensory loss in both lower extremities symmetrically in an L5 distribution to light touch. Strength was 3-4/5 in the right leg major muscle groups and 4/5 on the left. There was no ankle clonus. Skin exam was otherwise unremarkable. Vascular exam was unremarkable.
>
> Based upon the allowed physical conditions in this claim, namely the L4-L5 disc protrusion, it is my medical opinion that Frank Reeves is permanently and totally disabled from any form of substantial gainful employment as a direct and proximate result of that allowed physical condition. Mr. Reeves has almost no capacity to bend. He cannot squat or crawl. He should not climb stairs. He cannot climb ladders. Lifting would be no more than 5 pounds on an occasional basis. Twisting would be only occasionally. He could stand for no more than one hour in an eight hour day and the same with walking and would have to take breaks frequently as needed. He could sit no

more than three to four hours in an eight hour day and have the ability to change position as needed.

(Stip. at 496-97.)

{¶ 34} 24. CDC opposed PTD with a recent and updated report from Dr. Freedman, who concluded that Reeves was capable of full-duty work without restrictions:

> After review of the additional medical provided, my conclusions submitted in my 8/13/19 IME (Report dated 8/15/19) remain unchanged. Specifically, it remains my medical opinion to a reasonable degree of medical probability, that the allowed physical conditions had resolved. This specifically included resolution of the allowed, "Lumbar sprain" as well as no longer having any symptoms or exam findings to support the presence of the condition, "Disc protrusion L4-5." Instead, the claimant's clinical presentation and symptoms were due solely to non-allowed conditions of, "Lumbar spondylosis, including multi-level degenerative disc disease (DDD) and [as] well as multi-level facet arthritis." This is supported by the following:
>
> * * *
>
> I continue to stand by my medical opinion previously submitted regarding the claimant's permanent partial impairment rating for the 10/21/04 work injury. When solely considering the allowed physical conditions, the claimant has an impairment rating [of] 1% WPI.
>
> * * *
>
> Based on considering the allowed physical conditions only, the conditions, "sprain lumbar" and "L4-5 disc protrusion" have both clinically resolved. The neurologic exam is normal and does not demonstrate any objective findings specific to the L4-5 disc level. In addition, the lumbar sprain is also clinically resolved. The claimant's present limitations and symptoms relate solely to the management of the non-work-related, non-allowed conditions of lumbar spondylosis, including the degenerative disc disease and facet arthritis.
>
> Therefore, when solely considering the resolved allowed physical conditions, the claimant is capable of working in a full duty capacity without restrictions. No Permanent Total Disability is justified. See attached form.

(Stip. at 510-12.)

{¶ 35} 25. James Sardo, M.D., examined Reeves on behalf of the commission on August 26, 2020. Dr. Sardo concluded that the allowed conditions left Reeves unable to work. (Stip. at 643-47.)

{¶ 36} 26. CDC attacked the bases for Dr. Sardo's opinion on several grounds, including Dr. Sardo's failure to consider that Reeves had applied for and received SSDI based on non-allowed back conditions. CDC emphasized that the impact of these non-injury-related conditions was supported by numerous medical reports from treating physicians indicating that Reeves received a diagnosis of chronic pain due to degenerative disc disease aside from the allowed conditions.

{¶ 37} 27. An SHO granted CDC's request to depose Dr. Sardo with respect to the questionable elements of Dr. Sardo's report by order dated October 13, 2020. The SHO acknowledged that "the Injured Worker has received medical treatment to the low back outside of this industrial claim * * * [and] the Injured Worker has non-allowed lumbar conditions which were reported to be the source of the Injured Worker's symptoms." (Stip. at 582.)

{¶ 38} 28. Counsel for CDC then deposed Dr. Sardo who, advised of CDC's contrary medical evidence, revised his opinion and gave a verbal opinion that, to the extent that Reeves was incapable of work, it was not due to the allowed conditions. In doing so, Dr. Sardo expressly stated that he now agreed with Dr. Freedman's assessment on this question. (Stip. at 630.)

{¶ 39} 29. On March 4, 2021, an SHO issued an order granting Reeves' application for PTD based solely on the report of Dr. May and the allowed condition of L4-5 disc protrusion. The SHO concluded that Reeves was "unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical condition(s)." (Stip. at 718-19.) The SHO's decision does not raise or discuss the impact of Reeves' termination from employment in 2015 or his concurrent receipt of SSDI benefits. No transcript was made of proceedings before the SHO.

{¶ 40} 30. CDC applied for reconsideration of the SHO order granting PTD. (Stip. at 720.) Among numerous points of alleged error, CDC's application for reconsideration

stated the following: "Reeves was 50 years old on the date he last worked, 10/21/13. Since then, he has made no good faith effort to return to the workforce in any capacity." (Stip. at 726.) CDC went on to argue this point as follows: "During the course of the 03/04/21 hearing, Reeves testified that if he could find a job doing something he liked, he would give it consideration. This statement is significant for two reasons: (1) it seemingly reflects the belief that Reeves does not consider himself permanently and totally disabled; and (2) his words do not match his deeds. In the over seven years since Reeves stopped working, he has not made a good faith effort to find employment in any capacity, and has never requested authorization to participate in vocational services. At present, he is just 57 years old." (Stip. at 730.)

{¶ 41} 31. The commission denied CDC's request for reconsideration by order mailed April 12, 2021, without elaborating on its reasoning other than that the application did not meet the requirements for reconsideration. (Stip. at 821-22.)

Discussion and Conclusions of Law:

{¶ 42} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 43} When a commission hearing officer has issued a final order, the commission may reconsider the matter under limited circumstances: (1) new and changed circumstances; (2) evidence of fraud; (3) clear mistake of fact; (4) clear mistake of law; and (5) error by an inferior tribunal. R.C. 4123.52(A); *State ex rel. Wheeler v. Indus. Comm.*,

10th Dist. No. 02AP-865, 2003-Ohio-3120. Failure to limit or exercise such discretionary authority on reconsideration may constitute an abuse of discretion. *Wheeler*.

{¶ 44} CDC asserts the commission's orders awarding first, 16 percent PPD and second, PTD, are not supported by any evidence upon which the commission could rely. CDC also asserts that the award of PTD was an abuse of discretion because Reeves had voluntarily abandoned the workforce.

{¶ 45} Pursuant to R.C. 4123.57(A), a determination of the percentage of an employee's permanent disability must be based on medical or clinical findings that are reasonably demonstrable. *State ex rel. Campbell v. Indus. Comm.*, 10th Dist. No. 12AP-914, 2013-Ohio-4052, ¶ 32; *see also* Ohio Adm.Code 4121-3-15(E)(1). The claimant bears the burden of establishing a proximate causal relationship between a workplace injury and resulting disability. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). As demonstrated in the above SHO reports, BWC has adopted the *AMA Guides to the Evaluation of Permanent Partial Impairment, Fifth Edition*, for use by medical examiners and subsequent adjudicators of PPD claims.

{¶ 46} CDC asserts that the commission's order awarding Reeves a 16 percent PPD is unsupported by demonstrable medical or clinical findings to establish that Reeves' disability is related to his allowed physical conditions. The SHO's August 10, 2020 order awarding Reeves a 16 percent PPD relied on the reports of Drs. Hall and Cunningham who each physically assessed his impairment using the AMA Guides. Both doctors assessed Reeves' impairment and attribute it to the allowed L4-5 disc herniation.

{¶ 47} The reports relied on by the SHO meet the "some evidence" standard and are internally consistent. They identify the allowed conditions correctly, describe physical findings after examination, and apply the AMA Guides to assess impairment. The SHO's reliance on these two reports was not an abuse of discretion, and the SHO was not obligated to prefer contrary medical evidence.

{¶ 48} It follows that the commission did not err in denying reconsideration. CDC has not indicated a clear mistake of fact or law in the SHO's decision that would support a basis for continuing jurisdiction by the commission under R.C. 4123.52.

{¶ 49} CDC then alleges an abuse of discretion in the SHO's March 4, 2021 order granting Reeves PTD. This order is based solely on the report of Dr. May dated February 21,

2020. CDC asserts that Dr. May's report is not reliable evidence upon which the commission could rely because it does not comply with Ohio Adm.Code 4121-3-34(D)(1)(d). CDC further argues that Reeves may not pursue PTD compensation because he voluntarily abandoned his employment when he was terminated pursuant to the collective bargaining agreement.

{¶ 50} Pursuant to R.C. 4123.58(C)(2), the commission may award PTD compensation when the impairment resulting from an injury prevents the injured worker from engaging in sustained remunerative employment. *State ex rel. Lynch v. Indus. Comm.*, 171 Ohio App.3d 453, 2007-Ohio-292, ¶ 13-14, (10th Dist.). Ohio Adm.Code 4121-3-34(D)(2) further specifies that an injured worker shall be awarded PTD without reference to supplemental vocational factors and limitations, if the commission finds that the medical impairment from the allowed conditions prohibits the injured worker from performing sustained remunerative employment. *State ex rel. Speelman v. Indus. Comm.,* 73 Ohio App.3d 757 (10th Dist.1992).

{¶ 51} Again, the commission is the exclusive evaluator of the weight and credibility of evidence, medical or other, when addressing a claim. The commission therefore has the discretion to accept an evaluating physician's conclusion that the allowed conditions are the cause of a permanent total impairment. *State ex rel. Burley v. Coil Packing, Inc.,* 31 Ohio St.3d 18, 20-21 (1987). It remains axiomatic in workers' compensation law that the presence of non-allowed conditions does not bar a PTD award that is properly based solely on allowed conditions. *Waddle*; *State ex rel. Ferno-Washington, Inc. v. Indus. Comm.*, 10th Dist. No. 17AP-100, 2017-Ohio-8216.

{¶ 52} Ohio Adm.Code 4121-3-34(C)(1) requires that each application for PTD shall be based upon "medical examination * * * performed within twenty-four months prior to the date of filing of the application for compensation for permanent total disability. The medical evidence used to support an application for compensation for permanent total disability is to provide an opinion that addresses the injured worker's physical * * * limitations resulting from the allowed conditions in the claim(s). Medical evidence which provides an opinion addressing such limitations, but which also contains a conclusion as to whether an injured worker is permanently and totally disabled, may be considered by a hearing officer."

{¶ 53} Dr. May's assessment of Reeves' ability to perform sustained remunerative employment as impaired by the allowed conditions complied with the above administrative code language and constituted some evidence. The fact that there is extensive contradictory and conflicting evidence from treating physicians over the years preceding the application does not prohibit the commission from awarding PTD upon appropriate evidence supporting it. The commission is not required to explain why certain evidence was relied upon to the exclusion of contrary evidence. *State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915. The SHO did not abuse his discretion in considering the medical evidence as described in the decision.

{¶ 54} Finally, CDC asserts the SHO erred in failing to consider the possibility that Reeves had voluntarily abandoned the workforce prior to applying for PTD compensation.

{¶ 55} It is a fundamental concept of Ohio workers' compensation law that the claimant's right to compensation must stem from the allowed conditions. As a result, "[a] claimant's eligibility for permanent-total-disability compensation may be affected if the claimant has voluntarily retired or abandoned the job market for reasons not related to the industrial injury." *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 14. In the context of this mandamus action, two questions arise from application of this principle. The first requires a determination of governing law in light of recent modifications to the applicable statutes; the second requires a determination of whether the voluntary abandonment issue was properly and timely raised in administrative proceedings. Even if these two questions are resolved in favor of CDC, a factual determination regarding voluntary abandonment is outside the scope of this action because the commission has not addressed the pertinent facts in the first instance, and a writ would at most require the commission to do so, rather than order the commission to reach a certain outcome.

{¶ 56} Ohio's governing case law for voluntary abandonment cases has over the years been unsettled in detail if not in general principle. In response, the Ohio legislature passed H.B. No. 81, which modified R.C. 4123.58, governing PTD (and made rather more significant changes to R.C. 4123.56, governing TTD). The amendments are effective September 15, 2020. The pre-H.B. 81 version contained the following language: "Permanent total disability shall not be compensated when * * * [t]he employee retired or

otherwise voluntarily abandoned the workforce for reasons unrelated to the allowed injury or occupational disease."  Former R.C. 4123.58(D)(3). After amendment, the equivalent section eschews the phrase "voluntarily abandoned" and provides that PTD shall not be paid when the "employee retired or otherwise is *not working* for reasons unrelated to the allowed injury or occupational disease." (Emphasis added.) R.C. 4123.58(D)(3).  Unlike the concomitant amendments to TTD law, the new language does not contain a legislative admonishment that all prior case law on the topic is nullified by the amendment.  *See* R.C. 4123.56(F): "It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section."

{¶ 57} The first question to resolve in a voluntary abandonment case, therefore, is a determination of the governing law, since the legal standards for PTD eligibility may be drawn from governing cases interpreting the former statute, or, to the contrary, H.B. 81's new language that may compel a different result.  Although the outcome in the present matter might not vary, the choice of law is still a threshold issue.  The magistrate concludes that final adjudications of the commission occurring after the effective date of H.B. 81, as here, should be examined under the amended statute. *State ex rel. Decapua Enters. v. Wolfe*, 10th Dist. No. 20AP-174, 2021-Ohio-3987. The current version of R.C. 4123.58 applies, as well as any subsequent modifications to pertinent regulations.

{¶ 58} In this respect, current Ohio Adm.Code 4121-3-34(D)(1)(d) provides guidelines for commission hearing officers on this topic: "If, after hearing, the adjudicator finds that the injured worker is not working for reasons unrelated to the allowed injury or occupational disease, the injured worker shall be found not to be permanently and totally disabled."  Until February 1, 2021, this section read as follows: "If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. *If evidence of voluntary removal or retirement is brought into issue*, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement." (Emphasis added.) Former Ohio Adm.Code 4121-3-34(D)(1)(d). The amended regulation reflects the impact of H.B. 81 in the choice of terminology.

{¶ 59} Applying the current statute and regulations, the next question is whether CDC timely raised the issue of whether Reeves was "not working for reasons unrelated to the allowed injury or occupational disease." The rule has long been that this is an affirmative defense to be raised by the employer at a point when the claimant has a meaningful opportunity to respond: "Because voluntary abandonment of all employment is an affirmative defense and an issue critical to eligibility for compensation for permanent total disability, if evidence of voluntary abandonment has been brought into issue, a hearing officer's failure to address the issue constitutes a mistake of law." *State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, ¶ 17, citing former Ohio Adm.Code 4121-3-34(D)(1)(d). Conversely, however, "if the defense of voluntary abandonment has *not* been brought into issue at the SHO hearing, then it is an abuse of the hearing officer's discretion to address it, because the claimant has not been afforded due process, i.e., sufficient notice and an opportunity to present evidence on the issue" and rebut the allegations of abandonment of the workforce. (Emphasis sic.) *State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 16, citing *State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 5.

{¶ 60} The magistrate first notes that nothing in the recent changes to statute and rule supports divergence from the clear requirement expressed in the above cases that "voluntary abandonment/not working for reasons other" contentions must be affirmatively raised by the employer at a time when the claimant could address the issue. The law presented in leading cases discussed in the parties' briefs, therefore, still controls.

{¶ 61} CDC contends that there was evidence in the file such that the SHO should have addressed whether Reeves was not working for reasons other than the allowed conditions. First, there was uncontroverted evidence that Reeves had been terminated from employment in compliance with a valid collective bargaining agreement. Second, Reeves' social security file was in the record to demonstrate that contemporaneously with his renewed absence from work in 2014, Reeves had sought and obtained SSDI that was based on his non-allowed condition of degenerative disc disease. CDC further argues that "the entirety of CDC's Request for Reconsideration [from the SHO's order] is premised on Reeves' clinical presentation and alleged inability to work being based on nonallowed conditions." (CDC Reply Brief at 14.)

**{¶ 62}** The magistrate first notes that evidence and argument in a motion for reconsideration before the commission does not support timely assertion of the affirmative defense. The argument must be raised, at the latest, before the SHO and perhaps even before the DHO: "Navistar attempts to distinguish [*State ex rel. Quarto Mining v. Foreman*, 79 Ohio St.3d 78 (1997)] by pointing out that the employer in that case first raised the issue of voluntary abandonment in a petition for a writ of mandamus, while Navistar first argued the issue in its motion for reconsideration before the commission. That distinction makes no difference: either way, the claimant has been denied the opportunity to present evidence on the issue." *Navistar* at ¶ 18.

**{¶ 63}** CDC cites *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, for the proposition that the bare presence in the record before the SHO of some evidence relating to the claimed affirmative defense is sufficient to require the SHO to fully consider and rule on the defense. In *Sheppard*, the court considered whether the SHO was required to address evidence pertaining to the occurrence of an intervening injury. The court therefore questioned if the SHO was *required* to consider evidence relating to whether the industrial injury was the actual cause of the allowed condition, once such evidence was introduced. The court held that the SHO was so required.

**{¶ 64}** *Sheppard* is not applicable here. In the present case, CDC has not asserted that the source of Reeves' allowed condition is in dispute, but rather that the source of Reeves' unemployment is other than the allowed condition. This is not a distinction without a difference, because the issues fall at different points in the "sequential evaluation of applications for compensation" under Ohio Adm.Code 4121-3-34(D). The adjudicator is first required under Ohio Adm.Code 4121-3-34(D)(1)(a) to establish whether the claimant meets the statutory definition of permanent total disability under R.C. 4123.58(C) (The loss of enumerated limbs or "impairment resulting from the employee's injury * * * prevents the employee from engaging in sustained remunerative employment."). The adjudicator then under Ohio Adm.Code 4121-3-34(D)(1)(d) considers the "voluntary abandonment/not working for reasons other" issue. The latter point has been definitively postured as an affirmative defense by the Supreme Court of Ohio, the former has not. *Sheppard*'s conclusion that the bare presence of supporting evidence requires the SHO to take certain actions is not applicable here.

{¶ 65} The record in this case lacks a transcript of proceedings before the SHO, nor does it present any pretrial briefs or other pleadings that allow this court to conclude that "voluntary abandonment/not working for reasons other" was asserted as an affirmative defense and argued before the SHO in a manner that would have allowed Reeves to refute the proposition. The bare presence of evidence in the record of Reeves' application for SSDI and his termination from employment does not suffice to show that the issue was raised in a manner that required the SHO to adjudicate it. The SHO did not commit an abuse of discretion in omitting discussion and conclusions on this question.

{¶ 66} Again, it then follows that the commission did not err in denying reconsideration. CDC has not indicated a clear mistake of fact or law in the SHO's decision that would support a basis for continuing jurisdiction by the commission under R.C. 4123.52.

{¶ 67} In summary, the magistrate concludes that the SHO orders did not contain clear errors of law or fact in granting PPD and PTD; opposition to PTD on the basis of "voluntary abandonment/not working for reasons other" remains an affirmative defense to be timely asserted by the responsible employer; CDC did not timely raise such a defense; and the commission properly refused reconsideration of its orders awarding an initial award of 16 percent PPD and subsequent award of PTD. It is the decision and recommendation of the magistrate that no writ should issue in the present case.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).