[Cite as *State ex rel. OneSource Emp. Mgt., L.L.C. v. Indus. Comm.*, 2026-Ohio-366.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. OneSource Employee Management LLC, | : | |
| Relator, | : | |
| | | No. 24AP-615 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on February 5, 2026

**On brief:** *Dinsmore & Shohl, LLP, Melissa A. Black,* and *Christen S. Hignett*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Natalie J. Tackett* for respondent Industrial Commission of Ohio.

**On brief:** *Kenneth S. Hafenstein*, and *Samuel H. Herdman*, for respondent Charles L. Storts.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BOGGS, P.J.

{¶ 1} On October 8, 2024, relator, OneSource Employee Management LLC ("OneSource"), filed this original action requesting a writ of mandamus ordering the respondent, Industrial Commission of Ohio, to vacate its order awarding permanent total disability benefits to respondent, Charles L. Storts, and to issue an order denying Storts's application for permanent total disability benefits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the

appended decision, including findings of fact and conclusions of law. The magistrate recommended this court deny OneSource's request for a writ of mandamus.

{¶ 3} On August 19, 2025, OneSource filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). For the following reasons, we overrule OneSource's objections and adopt the magistrate's decision.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 4} On January 19, 2019, Storts was injured in the course of and arising out of his employment with OneSource. Storts was injured when a piece of metal pierced the windshield of the truck he was driving and struck his forehead above his left eye. Storts filed a workers' compensation claim which was ultimately allowed for: concussion without loss of consciousness; unspecified superficial injury other part of head; bilateral tinnitus; post-concussion syndrome; major depressive disorder, mild; cervical sprain; internal carotid artery dissection.

{¶ 5} Storts had been previously injured on November 21, 2017, when he was employed as a truck driver for BEX Logistics, Inc. Storts had fallen and hit his head when he climbed out of a tractor-trailer. Storts filed a workers' compensation claim that was ultimately allowed for abrasion of scalp and closed head injury with loss of consciousness.

{¶ 6} Following the January 19, 2019 injury, Storts did not return to work. On November 3, 2021, Dr. Bruce S. Kay, M.D., examined Storts and stated in a report that Storts "sustain[ed] a concussion and has post-concussion syndrome. The patient's main complaint is that of lightheadedness along with headaches. The lightheadedness has made it impossible for him to return to work and has not improved since the accident of 2019. The lightheadedness occurs every day and limits all of his daily functions and during his examination he got lightheaded several times after just short periods of time." (Stip. at 81.) Dr. Kay further stated that the 2019 injury and concussion "has made it impossible for him to return to any sustained employment" and that the injuries from the 2019 incident, combined with the 2017 injury, have rendered Storts permanently and totally impaired from all gainful employment. (Stip. at 35, 81.)

{¶ 7}  On November 29, 2021, Dr. Charles Paugh, Ph.D., conducted a psychological evaluation of Storts and concluded that

> Information obtained during the course of the interview as well as the mental status examination indicate Mr. Storts with a Moderate to Marked level of impairment in the area of Concentration/Persistence/Pace, a Moderate level of impairment in the area of Activities of Daily Living and Mild levels of impairment in the areas of Social Functioning and Adaptation to Work Settings.
>
> . . .
>
> I estimate Charles L. Stort's level of permanent partial impairment relative to his diagnosis of Major Depressive Disorder, Mild to be 27%.

(Stip. at 89-90.)

{¶ 8}  On December 21, 2022, Storts filed an application for permanent total disability compensation, supported by the reports of Dr. Kay and Dr. Paugh.

{¶ 9}  Storts was also examined by Kenneth Mankowski, D.O., and Suhir Dubey, Psy.D., at the request of OneSource.  Dr. Mankowski found that Storts was capable of performing sustained, remunerative employment, as the allowed conditions in his claim did not serve as obstacles to any work activities or necessitate work related restrictions. (Stip. at 149.)  Dr. Mankowski found that Storts's post-concussion syndrome had resolved without any residual pathology or impairment and that it was not possible for these "conditions, from more than 4 years ago, to be the cause or even a contributing factor to any ongoing neurological impairment that would be an obstacle to any work activities." *Id.* As to bilateral tinnitus, Dr. Mankowski found that the condition had improved, is not associated with any physical impairment, and did not necessitate any work-related restriction, while it did limit work capacity.  Dr. Mankowski also found that Storts's major depressive disorder, mild, was not causally related to any of the allowed physical injuries of the claim.  In a subsequent report, dated June 26, 2023, Dr. Mankowski also found that the additional allowed condition of dissection of carotid artery did not preclude a successful and safe return to performing sustained remunerative employment.  (Stip. at 176.)

{¶ 10} On July 18, 2022, Dr. Dubey, evaluated Storts and found that Storts had reached maximum medical improvement pertaining to the psychological conditions in his claim and that no work restrictions were necessary.

{¶ 11} The commission also referred Storts to examinations with various physicians, including Andrew M. Stein, M.D., James J. Powers, M.D., Gordon A. Harris, Ph.D., and Paul T. Hogya, M.D. Dr. Stein concluded that, as it pertains to the bilateral tinnitus condition in Storts's claim, Storts had reached maximum medical improvement and had a 2 percent whole person impairment from the condition. Dr. Powers similarly found that Storts was at maximum medical improvement and that he was capable of light work with the restriction of no bending below the waist. Dr. Powers assessed that Storts had an 18 percent whole person impairment for the cervical sprain and concussion-related claims. Dr. Harris evaluated Storts for the psychological condition in his claim and found that Storts had a 33 percent whole person impairment due to his depression and that Storts had reached maximum medical improvement for this condition. Dr. Harris found that Storts could only work in a "position which required very limited attention, concentration, and focus," which would preclude him from his previous job as a truck driver or from operating heavy equipment. (Stip. at 173.) Dr. Harris noted that Storts's pace was somewhat slowed and that his interpersonal interactions are limited, thereby requiring a position with reduced productivity expectations and limited interaction with the public, supervisors, and co-workers. Dr. Hogya evaluated Storts on the allowed condition of internal carotid artery dissection and found that Storts had no medical restrictions in regard to that allowed condition.

{¶ 12} On April 29, 2024, a commission staff hearing officer ("SHO") conducted a hearing on Storts's application for permanent total disability compensation. On May 17, 2024, the SHO issued an order granting Storts's application for permanent total disability compensation, beginning May 24, 2023. After reviewing the reports of Drs. Stein, Powers, and Hogya, the SHO found that Storts retained "residual functional capacity to perform sedentary to light work." (Stip. at 207, SHO Decision at 2.) The SHO then considered Storts's non-medical disability factors according to *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). The SHO concluded that Storts had reached an advanced age, had a work history of solely being a truck driver, had a limited education level, that

Storts could not return to his previous line of work, combined with psychological conditions rendered him incapable of sustained remunerative employment under the *Stephenson* factors.

{¶ 13} On May 29, 2024, OneSource filed a request for reconsideration of the SHO's decision. On June 12, 2024, the commission denied OneSource's request.

{¶ 14} On October 8, 2024, OneSource filed the present mandamus action with this court. In its petition for a writ of mandamus, OneSource requested this court to order the commission to vacate its May 17, 2024 order awarding permanent total disability benefits and to issue an order denying Storts's application for permanent total disability benefits.

{¶ 15} On August 5, 2025, the magistrate issued the attached decision, finding that OneSource failed to demonstrate a clear legal right to the requested relief or that the commission was under a clear legal duty to provide it. The magistrate recommended that this court deny OneSource's request for a writ of mandamus.

## II. OBJECTIONS TO THE MAGISTRATE'S DECISION

{¶ 16} On August 19, 2025, OneSource submitted its objections to the magistrate's decision arguing the following:

> (1.) The Magistrate erred in finding Dr. Powers' report was some evidence for the staff hearing officer's statement that Respondent Storts was capable of sedentary to light work.
>
> (2.) The Magistrate erred in finding the opinion contained in Dr. Harris' report concerned an analysis of a non-medical disability factor that limited Respondent Storts' to less than sedentary employment.
>
> (3.) The Magistrate erred in finding the "staff hearing officer's order, read as a whole, leaves no question regarding whether Storts had or could reasonably be expected to develop employment skills that would enable him to engage in sustain remunerative employment."
>
> (4.) The Magistrate erred in assuming Relator did not raise the issue of retirement at the staff hearing officer hearing.
>
> (5.) The Magistrate erred in concluding the staff hearing officer order contained sufficient discussion of age.

## III. ANALYSIS

{¶ 17} An employer seeking a writ of mandamus who contends that the commission's decision to grant benefits was not supported by sufficient evidence must demonstrate that the commission abused its discretion. "For more than fifty years, the 'some-evidence' rule, although not always referred to by that name, has been recognized as the rule to be applied in determining whether there has been an abuse of discretion with respect to factual matters." *State ex rel. Johnson v. Indus. Comm. of Ohio*, 11 Ohio App.3d 22, 23 (10th Dist. 1983). "[T]he mandamus determination must be predicated upon a finding whether or not there is evidence to support the findings of the Industrial Commission, not whether this court agrees with those findings." *Id.*, citing *State ex rel. Questor Corp. v. Indus. Comm.*, 70 Ohio St.2d 240 (1982).

{¶ 18} We note that the presence of contrary evidence is not dispositive, so long as the "some evidence" standard has been met. *State ex rel. Am. Std., Inc. v. Boehler*, 2003-Ohio-2457, ¶ 29. " 'Where there is no evidence upon which the commission could have based its factual conclusion an abuse of discretion is present and mandamus becomes appropriate.' " *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 167 (1981), quoting *State ex rel. Kramer v. Indus. Comm*, 59 Ohio St.2d 39, 42 (1979). We therefore consider whether the commission's decision to grant permanent total disability compensation to Storts was supported by some evidence in the record.

{¶ 19} " 'Entitlement to permanent total disability compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment.' " *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 455 (1993), quoting *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 24 (1992). Nonmedical factors include the "claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record[.]" *Stephenson* 31 Ohio St.3d at 173. "[A] claimant's medical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability." (Emphasis deleted.) *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 321 (1994). *See State ex rel. Navistar, Inc. v. Indus. Comm.*, 2020-Ohio-712, ¶ 23, quoting *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40

(1991) ("While the commission may not *deny* PTD compensation without considering nonmedical factors, it may *grant* PTD compensation without considering nonmedical factors when 'medical factors alone preclude sustained remunerative employment.' "). (Emphasis in original.) The commission is required to "specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), paragraph one of the syllabus.

{¶ 20} In *Stephenson*, the Supreme Court of Ohio held that the commission must "look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination of permanent total disability." *Stephenson* at 173. The Supreme Court has also stated that "[t]he commission's consideration of the *Stephenson* factors is essential to the determination of permanent total disability, where the medical evidence indicates that the claimant is capable of some work and the nonmedical disability factors indicate that the claimant cannot realistically engage in sustained remunerative employment." *State ex rel. Gemind v. Indus. Comm.*, 82 Ohio St.3d 457, 460 (1998), citing *Gay* at 320 ("A thorough consideration of the *Stephenson* factors is indispensable to the determination of permanent total disability, where a claimant's medical capacity to do work is not dispositive and the claimant's nonmedical disability factors indicate that the claimant cannot realistically return to the job market.").

{¶ 21} We now address each of OneSource's objections in turn. OneSource's objections lodge essentially the same arguments it made to the magistrate and do not raise new legal issues. Rather, OneSource simply disagrees with the magistrate's conclusions. In its first objection, OneSource argues that the magistrate erred in finding that Dr. Powers's report constitutes some evidence to support the SHO's finding that Storts retained the residual functional capacity to perform sedentary work. OneSource argues that Dr. Powers's report is more akin to a "mere scintilla" of evidence, as juxtaposed to the "some evidence" rule in *State ex rel. Johnson v. Indus. Comm.*, 11 Ohio App.3d 22 (10th Dist. 1983). We do not agree. In *Johnson*, this court stated:

> A mere scintilla of evidence would be insufficient to support the finding of the Industrial Commission. Rather, the "some-evidence" rule is somewhat akin to the rule applied in civil cases to determine whether a verdict should be directed. See Civ. R. 50(A)(4). Thus, the mandamus determination must be

predicated upon a finding whether or not there is evidence to support the findings of the Industrial Commission, not whether this court agrees with those findings. In making the appropriate determination, the court is required to construe the evidence most strongly in favor of supporting the findings of the Industrial Commission. This appears to be the "some-evidence" rule, namely, whether, when construed most strongly in favor of supporting the findings of the Industrial Commission, the evidence reasonably supports the findings made by the Industrial Commission.

*Id.* at 23.

{¶ 22} As the magistrate noted, the SHO's findings were based on the reports of Dr. Stein, Dr. Powers, and Dr. Hogya. Dr. Powers's report constitutes some evidence to support the commission's finding that Storts was capable of sedentary to light work. We accordingly overrule OneSource's first objection.

{¶ 23} OneSource, in its second objection, argues that the magistrate erred in finding the opinion in Dr. Harris's report concerned an analysis of a non-medical disability factor that limited Storts to less than sedentary employment. Specifically, OneSource argues that Dr. Harris's report was limited to allowed psychological conditions and cannot be considered "some evidence" in the commission's analysis under *Stephenson*. We recognize that the commission "is the exclusive evaluator of weight and credibility and that as long as some evidence supports the commission's decision, we will defer to its judgment." *State ex rel. Athey v. Indus. Comm.*, 89 Ohio St.3d 473, 475 (2000), citing *LTV Steel Co.*, 88 Ohio St.3d at 287. Dr. Harris noted that Storts had a moderate impairment in concentration, persistence, pace, and adaption. We do not find an abuse of discretion in the SHO's consideration how these psychological conditions would impact Storts's ability to do physical work under its *Stephenson* analysis, but rather defer to the commission as the evaluator of this evidence. We overrule OneSource's second objection.

{¶ 24} In its third objection, OneSource argues that the magistrate erred in not finding that the SHO committed an abuse of discretion by failing to analyze whether Storts should have pursued vocational rehabilitation. OneSource states that the magistrate "erred in finding the 'staff hearing officer's order, read as a whole, leaves no question regarding whether Storts had or could reasonably be expected to develop employment skills that would enable him to engage in sustained remunerative employment.' " (Relator's Obj.'s at

6.) Relator argues it was an abuse of discretion for the SHO not to consider Storts's failure to pursue any vocational rehabilitation before granting the PTD application. We disagree. As the magistrate noted, none of the SHO's findings raised a question whether vocational rehabilitation would be beneficial to Storts, nor did OneSource raise vocational rehabilitation before the commission. In *Walter v. Indus. Comm. of Ohio*, 2009-Ohio-5974 (10th Dist.), this court rejected that the commission *must* consider vocational rehabilitation efforts made by an injured worker but rather held that this could be a factor in the commission's consideration. In *State ex rel. Deerfield Mfg. v. Taylor*, 2008-Ohio-2296 (10th Dist.), this court also rejected an employer-relator's argument that a claimant was capable of undergoing vocational rehabilitation as it had not offered evidence demonstrating such. We similarly reject OneSource's objection here.

{¶ 25} OneSource, in its fourth objection to the magistrate's decision, argues that the commission abused its discretion in failing to consider the effect and nature of retirement on Storts's eligibility for permanent total disability compensation. The magistrate, in relying on *Columbus Distrib. Co. v. Reeves*, 2023-Ohio-898 (10th Dist.), found that OneSource failed to present any evidence that Storts was not working for reasons unrelated to the allowed injury. We agree with the magistrate. Absent evidence in the record that OneSource raised arguments pertaining to voluntary retirement, we cannot find an abuse of discretion by the commission, and we overrule OneSource's fourth objection.

{¶ 26} In its final objection, OneSource argues that the magistrate erred in concluding that the SHO's order contained sufficient discussion of Storts's age. We do not agree. The Supreme Court has found that the commission cannot simply acknowledge a claimant's age, it must discuss the claimant's age along with other aspects that may impact the effect of the claimant's age. *State ex rel. Moss v. Indus. Comm. of Ohio*, 75 Ohio St.3d 414, 417 (1996). Here, the commission properly acknowledged Storts's age but also discussed his age with other aspects pertinent to the commission's granting of permanent total disability compensation, such as his education level, work history, and the allowed psychological condition in Storts's claim. Accordingly, we overrule OneSource's fifth objection.

## IV. CONCLUSION

{¶ 27} Having overruled all of OneSource's objections and discerning no error in the magistrate's decision, we adopt that decision as our own and deny OneSource's request for a writ of mandamus.

*Objections overruled*;
*writ denied.*

JAMISON and DINGUS, JJ., concur.

————————

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. OneSource Employee, Management LLC, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  24AP-615 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 5, 2025

---

*Dinsmore & Shohl LLP, Melissa A. Black*, and *Christen S. Hignett*, for relator.

*Dave Yost,* Attorney General, and *Charles Kirby,* for respondent Industrial Commission of Ohio.

*Kenneth S. Hafenstein*, and *Samuel H. Herdman*, for respondent Charles L. Storts.

---

IN MANDAMUS

{¶ 28}  Relator OneSource Employee Management LLC ("OneSource") seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability compensation to respondent Charles L. Storts and to enter a new order denying Storts's request for such compensation. For the following reasons, the magistrate recommends denying OneSource's request for a writ of mandamus.

## I. Findings of Fact

{¶ 29}  1. Two workers' compensation claims are relevant to the instant matter. On November 21, 2017, Storts, who was employed as a truck driver for BEX Logistics, Inc., was injured in the course of and arising of his employment when he fell and hit his head while climbing out of the passenger side of a tractor-trailer. Storts filed a workers' compensation claim in 2018 ("the 2018 claim") for injuries resulting from this incident. The 2018 claim was allowed for the following conditions: abrasion of scalp and closed head injury with loss of consciousness.

{¶ 30}  2. Storts was injured in the course of and arising of his employment with OneSource on January 19, 2019 when a piece of metal pierced the windshield of the truck he was driving and struck him on the forehead above his left eyelid. Storts filed a workers' compensation claim related to this incident in 2019 ("the 2019 claim"). The 2019 claim was ultimately allowed for the following conditions: concussion without loss of consciousness; unspecified superficial injury other part of head; bilateral tinnitus; post-concussion syndrome; major depressive disorder, mild; cervical sprain; internal carotid artery dissection.

{¶ 31}  3. Storts ceased working following his injury on January 19, 2019 and did not return to work at any time since that date.

{¶ 32}  4. On December 21, 2022, Storts, through counsel, filed an application for permanent total disability compensation (also referred to as an "IC-2 application"). Storts's application was supported by medical notes, MEDCO-14 physician's report of work ability forms, and the reports of Bruce S. Kay, M.D., and Charles R. Paugh, Ph.D.

{¶ 33}  5. Dr. Kay's report was produced following an examination of Storts on November 3, 2021. In the report, Dr. Kay listed the conditions allowed at that time in both the 2018 and 2019 claims. Dr. Kay, noting in particular the concussion suffered by Storts in 2019, stated that Storts "has at the present time, significant lightheadedness and cognitive dysfunction that has made it impossible for him to return to any sustained employment." (Stip. at 35, 81.) Dr. Kay opined that "due to [Storts's] injuries mainly from the 2019 injury combined with the 2018 injury," Storts was "now permanent[ly] and totally impaired from all gainful employment." *Id.* Dr. Kay further stated that Storts was "not only

unable to return to his job . . . driving a truck, but also cannot perform any other sustained employment." *Id.*

{¶ 34} 6. Dr. Paugh conducted a psychological evaluation of Storts on November 29, 2021. With regard to the four functional areas, Dr. Paugh provided the following impairment ratings: (1) for activities of daily living, "Class 3-Moderate"; (2) for social functioning, "Class 2-Mild"; (3) for concentration, persistence, and pace, "Class 3, 4-Moderate to Marked"; (4) for adaptation to work settings, "Class 2-Mild." (Stip. at 88-89.) Dr. Paugh opined that Storts had a permanent partial impairment of 27 percent due to his allowed psychological condition. (Stip. at 90.)

{¶ 35} 7. At the request of OneSource, Storts was examined by Kenneth Mankowski, D.O., and Sudhir Dubey, Psy.D.

{¶ 36} 8. Dr. Mankowski conducted a physical evaluation of Storts on March 6, 2023 and issued a report. With regard to the allowed physical conditions in the 2019 claim at that time, Dr. Mankowski opined that Storts was capable of performing sustained, remunerative employment. With regard to the conditions of concussion without loss of consciousness and post-concussion syndrome, Dr. Mankowski found that "[t]hese conditions have resolved without any residual pathology or impairment," further stating that "[c]oncussion, by definition, does not result in permanent structural changes to the brain." (Stip. at 149.) Dr. Mankowski stated that "[i]t is not possible for these conditions, from more than 4 years ago, to be the cause or even a contributing factor to any ongoing neurological impairment that would be an obstacle to any work activities." *Id.* Dr. Mankowski found the condition of unspecified superficial injury of other part of the head was "essentially redundant" with the aforementioned conditions and had "resolved without any residual pathology or impairment." *Id.* With regard to the condition of bilateral tinnitus, Dr. Mankowski found the condition was not associated with any physical impairment, stating both that "[t]his condition does limit work capacity" and "this condition does not necessitate any work[-]related restrictions." *Id.*

{¶ 37} Following a review of records, Dr. Mankowski provided another report on June 26, 2023 addressing the additional allowed condition of dissection of carotid artery. Dr. Mankowski maintained the opinion that Storts was capable of performing sustained remunerative employment, stating that "[t]he additionally allowed claim of carotid

dissection does not preclude a successful and safe return to performing sustained, remunerative employment." (Stip. at 176.)

{¶ 38} 9. Dr. Dubey conducted a psychological evaluation of Storts on March 30, 2023. Dr. Dubey issued a report finding that Storts was at maximum medical improvement for the allowed psychological condition. Dr. Dubey opined that based on the allowed psychological condition, Storts was capable of performing sustained remunerative employment.

{¶ 39} 10. For purposes of evaluating Storts's application for permanent total disability, the commission referred Storts to examinations with the following specialists: Andrew M. Stein, M.D., James J. Powers, M.D., Gordon A. Harris, Ph.D., and Paul T. Hogya, M.D.

{¶ 40} 11. Dr. Stein examined Storts with regard to the allowed condition of bilateral tinnitus on May 23, 2023. Dr. Stein found in a report issued the same day that Storts had reached maximum medical improvement. According to Dr. Stein, Storts had a 5 percent binaural impairment related to the condition of bilateral tinnitus, which resulted in a 2 percent whole person impairment. Dr. Stein concluded that Storts would "not be limited to any particular work environments." (Stip. at 160.) In a residual functional assessment form attached to the report, Dr. Stein indicated Storts had no work limitations.

{¶ 41} 12. Storts was examined by Dr. Powers on May 24, 2023. In a report issued the same day, Dr. Powers summarized the history of the present conditions, past medical history, and the results of the physical examination of Storts. Next, Dr. Powers provided an opinion in response to questions posed by the commission. First, Dr. Powers found Storts had reached maximum medical improvement for the allowed conditions, noting that Storts was not on any significant medications or receiving any form of treatment.

{¶ 42} Second, Dr. Powers provided an estimated percentage of whole person impairment with regard to the allowed conditions. For the conditions of concussion without loss of consciousness, post-concussion syndrome, and closed head injury with loss of consciousness, Dr. Powers found a class 1 or 14 percent whole person impairment. For the condition of unspecified superficial injury other part of head and abrasion of scalp, Dr. Powers found no impairment. For the condition of tinnitus, Dr. Powers found no impairment. For the condition of cervical sprain, Dr. Powers found a category 2 or 5 percent

whole person impairment. Combining these areas, Dr. Powers found a "total of 18 [percent] whole person impairment." (Stip. at 165.)

{¶ 43} Third, with regard to residual functional capacity from the impairment associated with the allowed conditions, Dr. Powers stated that Storts "objectively has mild cognitive deficits" and had "restriction of range of motion in his cervical area." *Id.* Dr. Powers found that Storts's "subjective reports of symptoms and function are consistent with what would be reasonably expected to arise from the allowed conditions and congruent with my review of the records and examination findings." *Id.* at 166. Dr. Powers opined that Storts was "capable of light work with the restrictions listed under that section but also no bending below the waist." *Id.* In a physical strength rating form attached to the report, Dr. Powers mirrored the findings from the report with regard to Storts's work capability.

{¶ 44} 13. On June 15, 2023, Dr. Harris examined Storts with regard to the allowed psychological condition in the 2019 claim. Dr. Harris produced a commission mental and behavioral health specialist report dated June 20, 2023. In the report, Dr. Harris provided an overview of Storts's condition and history, summarized the results of the mental status examination, and reviewed the four functional areas.

{¶ 45} Dr. Harris responded to three questions posed by the commission. First, Dr. Harris found Storts had reached maximum medical improvement with regard to the allowed psychological condition as he had reached a treatment plateau at which no further progress could reasonably be expected with further treatment. Second, Dr. Harris provided the following percentages of impairment in each of the four functional areas: (1) for activities of daily living or typical day, a class 3 moderate impairment of 30 percent; (2) for social functioning, a class 2 mild impairment of 20 percent; (3) for concentration, persistence and pace, a class 3 moderate impairment of 40 percent; and (4) for adaptation, a class 3 moderate impairment of 40 percent. This resulted in a combined whole person impairment of 33 percent.

{¶ 46} Third, Dr. Harris provided the following response with regard to Storts's residual mental and behavioral capacity resulting from the impairment associated with the allowed psychological condition:

> It is difficult to determine how much of Mr. Storts's impairment in attention and concentration is due to post-

concussion syndrome and how much is due to depression; however, his mental status indicates that he has very significant problems with attention and concentration. He could only work in a position which required very limited attention, concentration, and focus. This would preclude his previous occupation as a truck driver or operator of heavy equipment. Mr. Storts also exhibits significant problems with memory and would require routine, repetitive tasks. This is also a function of his limited adaptation. His pace is also somewhat slowed and there would need to be reduced productivity expectations. Mr. Storts's interpersonal interactions are somewhat limited and he would also require a position which involved limited interaction with the general public, as well as supervisors and co-workers.

(Stip. at 173.) In an occupational activity assessment form attached to the report, Dr. Harris indicated that Storts was capable of work with the following limitations due to the allowed psychological condition alone:

1. 12-15 [hours] per week, 2-3 [hours] per day

2. No operation of heavy equipment or machinery which requires intense attention/concentration

3. Routine, repetitive tasks

4. Limited interaction with general public, co-workers and supervisors

5. Limited productivity expectations.

(Stip. at 174.)

{¶ 47} 14. On November 10, 2023, Dr. Hogya examined Storts with regard to the allowed condition of internal carotid artery dissection in the 2019 claim. In a report to the commission dated November 21, 2023, Dr. Hogya detailed the history of the injury and treatment, summarized Storts's report of current symptoms and impact on daily activities, and provided the findings from the examination.

Dr. Hogya also offered responses to the commission's questions. First, Dr. Hogya found Storts was at a treatment and rehabilitation plateau consistent with maximum medical improvement. Second, Dr. Hogya found there was a zero percent whole person impairment due to the allowed condition of internal carotid artery dissection. Third, Dr. Hogya found that based on the aforementioned allowed physical condition, Storts had no medical restrictions and was capable of functioning in a heavy industrial demand capacity. In a physical strength rating form attached to the report,

Dr. Hogya indicated Storts was capable of work in the physical demand classification of heavy work.

{¶ 48} 15. A commission staff hearing officer conducted a hearing on Storts's application for permanent total disability on April 29, 2024. In an order issued on May 17, 2024, the staff hearing officer granted the application. The staff hearing officer apportioned the entirety of the award to the 2019 claim, finding that the 2018 claim had been settled pursuant to a Bureau of Workers' Compensation order issued on January 8, 2024. The staff hearing officer summarized the history of the 2019 claim, the treatment received by Storts for the allowed conditions in the claim, and the reports of the commission's four specialists, including the limitations or restrictions contained in the reports. Based on the reports of Dr. Stein, Dr. Powers, and Dr. Hogya, the staff hearing officer found Storts "retain[ed] the residual functional capacity to perform sedentary to light work." (Stip. at 207.) As a result, the staff hearing officer proceeded to consider the nonmedical disability factors.

First, the staff hearing officer found Storts's age to be a negative factor for reemployment, stating that Storts had "reached the life stage of advanced age, and many workers at this age have retired or considering retirement." *Id.* at 208. Second, the staff hearing officer found Storts's education to also be a negative factor and made the following findings:

> Although [Storts] can read, write, and do basic math, he is a high school dropout. He attended South High School in Columbus, Ohio but dropped out after the tenth grade. He never obtained his GED, the high school equivalency diploma, and he has no other vocational or special training. [Storts] does not have any computer skills other than entering a limited amount of data into a truck, such as waypoints, which he did toward the end of his career. [Storts] testified that he does not have a smart phone.

(Stip. at 208.) Third, the staff hearing officer found Storts's work history to be a negative factor and stated:

> [Storts] has been an over-the-road truck driver, making deliveries and picking up loads, for more than 45 years, going back to approximately 1968 to 1970 according to the IC2 application. This is the only type of work he knows; he is unable to return to work as an over-the-road truck driver; and he has virtually no transferrable skills other than driving a truck, filling out log books, and occasionally entering small bits of data, like waypoints, into a truck computer. These

> limited skills do not enable [Storts] to transition into performing a sedentary to light work position in today's workforce.

*Id.* Fourth, the staff hearing officer made the following findings regarding the impact of the allowed psychological condition:

> [T]he restrictions imposed by Dr. Harris related to the allowed psychological condition as described above (routine, repetitive tasks; reduced productivity expectations; limited interaction with the public, supervisors, and co-workers) are so significantly prohibitive that the Staff Hearing Officer can think of no work [Storts] could perform other than work in a sheltered workshop, which is less than sedentary employment.

*Id.*

Based on the analysis of the above factors, the staff hearing officer found Storts's "medical impairment arising from the allowed conditions in [the 2019 claim] combined with his non-medical disability factors render him incapable of performing sustained remunerative employment." *Id.* As a result, the staff hearing officer awarded permanent total disability compensation beginning on May 24, 2023—the date of Dr. Powers's report. Finally, the staff hearing officer did not rely on the November 3, 2021 report of Dr. Kay.

{¶ 49} 16. OneSource filed a request for reconsideration of the staff hearing officer's May 17, 2024 order on May 29, 2024. The commission denied OneSource's request for reconsideration in an order mailed June 12, 2024.

{¶ 50} 17. OneSource commenced this mandamus action with the filing of its complaint on October 8, 2024.

## II. Discussion and Conclusions of Law

{¶ 51} OneSource seeks a writ of mandamus compelling the commission to vacate its order granting Storts permanent total disability compensation.

## A. Requirements for Mandamus

{¶ 52} A writ of mandamus may issue where OneSource has established a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *See State ex*

*rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). "A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties." *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10.

{¶ 53} With regard to legal questions, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975). With regard to factual determinations, where there is no evidence upon which the commission could have based its factual determination, the commission has abused its discretion and the issuance of a writ of mandamus is appropriate. *See State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 167 (1981); *State ex rel. Johnson v. Indus. Comm.*, 11 Ohio App.3d 22, 23 (10th Dist.1983) ("For more than fifty years, the 'some-evidence' rule, although not always referred to by that name, has been recognized as the rule to be applied in determining whether there has been an abuse of discretion with respect to factual matters.").

{¶ 54} Furthermore, in all matters affecting the rights and obligations of the claimant or employer, the commission must specifically state what evidence has been relied upon and briefly explain the reasoning for its decision. *See State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), at syllabus; *State ex rel. Yellow Freight Sys. v. Indus. Comm.*, 71 Ohio St.3d 139, 142 (1994).

## B. Permanent Total Disability

{¶ 55} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). Permanent total disability is the inability to do any sustained remunerative work due to the allowed conditions in the workers' compensation claim. *See State ex rel. Schultz v. Indus. Comm.*, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170; Adm.Code 4121-3-34(B)(1).

{¶ 56} R.C. 4123.58 governs compensation for permanent total disability, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C). Circumstances under which permanent total disability compensation may not be awarded are contained in R.C. 4123.58(D), which provides as follows:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;
>
> (2) Solely the employee's age or aging;
>
> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

**C. Analysis**

{¶ 57} OneSource asserts that the commission abused its discretion by awarding Storts permanent total disability compensation for five reasons. First, OneSource argues that the commission abused its discretion by finding that Storts retained the residual functional capacity to perform sedentary to light work based on the reports of Dr. Stein, Dr. Powers, and Dr. Hogya. OneSource argues that "[i]n reading the [staff hearing officer's] order, one objectively would believe that at least one of the three doctors specifically opined that Mr. Storts was limited to a sedentary work capacity." (OneSource's Brief at 12.) OneSource misunderstands the staff hearing officer's order.

{¶ 58} For purposes of determining permanent total disability, the physical demands of work are classified in defined categories in Adm.Code 4121-3-34(B)(2).

Physical demands are classified as sedentary, light, medium, heavy, and very heavy work.

"Sedentary work," which is the most restrictive category, is defined as:

> [E]xerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Adm.Code 4121-3-34(B)(2)(a). "Light work," the next category after "sedentary work," is defined as:

> [E]xerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work:
>
> (i)when it requires walking or standing to a significant degree; or
>
> (ii)when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or
>
> (iii)when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Adm.Code 4121-3-34(B)(2)(b).

{¶ 59} The staff hearing officer found Storts retained the residual functional capacity to perform sedentary to light work based on the reports of Dr. Stein, Dr. Powers, and Dr. Hogya. However, this finding does not mean that Storts was limited to sedentary work. Rather, as previously acknowledged by this court, the physical demand classification of "sedentary work" is encompassed within the meaning of the "light work" classification. *State ex rel. O'Brien v. Cincinnati, Inc.*, 2008-Ohio-2841, ¶ 12 (10th Dist.) (stating the fact that a physician "concluded relator could engage in 'light work,' consistent with Adm.Code 4121-3-34(B)(2)(b), is clearly indicative of his opinion that relator could also engage in even more restrictive sedentary work under Adm.Code 4121-3-34(B)(2)(a)"); *State ex rel. Spears*

*v. Indus. Comm.*, 2006-Ohio-1654, ¶ 4 (10th Dist.) (rejecting argument that magistrate erred by finding that " 'light work,' by definition, includes 'sedentary work' ").

{¶ 60} OneSource acknowledges, and the record reflects, that "Dr. Powers opined that Mr. Storts could work in a light work capacity." *Id.* at 12. This was some evidence to support a finding that Storts was capable of sustained remunerative work at the physical demand level of light work consistent with the restrictions in Dr. Powers's report. Because there was some evidence to support finding Storts was capable of light work, which encompasses both light work and the more restrictive category of sedentary work, it was not an abuse of discretion for the staff hearing officer to find that Storts was capable of sedentary to light work.

{¶ 61} Second, OneSource argues it was an abuse of discretion for the commission to conclude that Dr. Harris's report provided restrictions for less than sedentary work. OneSource's argument mischaracterizes the staff hearing officer's order. The staff hearing officer did not find that Dr. Harris's report alone rendered Storts unable to perform sedentary work, but rather analyzed Dr. Harris's report and limitations, which pertained to the allowed psychological condition, in the context of the nonmedical disability factors.

{¶ 62} Under Adm.Code 4121-3-34(D)(2)(b), where the commission finds that the claimant is unable to return to the former position of employment but may be able to engage in sustained remunerative employment based on the medical impairment resulting from the allowed conditions in the claim, the commission must consider the nonmedical factors. These nonmedical factors include the claimant's "age, education, work record, and all other factors, such as physical, **psychological**, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed." (Emphasis added.) Adm.Code 4121-3-34(D)(2)(b). *See Stephenson*, 31 Ohio St.3d at 173 (setting forth nonmedical disability factors incorporated in Adm.Code 4121-3-34(D)(2)(b)). Thus, even if the claimant is medically capable of some employment, the nonmedical disability factors may nevertheless support an award of permanent total disability compensation, provided that such award is not based on a reason prohibited by statute. *See State ex rel. Kidd v. Indus. Comm.*, 2023-Ohio-2975, ¶ 20.

{¶ 63} In this case, having found that Storts was medically capable of performing light to sedentary work, the staff hearing officer properly considered the nonmedical disability factors. *See State ex rel. Guthrie v. Indus. Comm. of Ohio*, 2012-Ohio-4637, ¶ 9. Noting that Storts was 67 years of age at the time of the hearing and 68 at the time the order was issued, the staff hearing officer found Storts's age to be a negative factor. The staff hearing officer found Storts's education to be a negative factor based on Storts's lack of formal education beyond the 10th grade and the absence of any vocational or special training. As Storts had only ever worked as an over-the-road truck driver—for over 45 years—and could not return to work in that capacity, the staff hearing officer found Storts's lack of diverse work experiences to be a negative factor. After considering those factors, the staff hearing officer "[f]inally" considered "the restrictions imposed by Dr. Harris related to the allowed psychological condition," including "routine, repetitive tasks; reduced productivity expectations; limited interaction with the public, supervisors, and co-workers." (Stip. at 208.) Considering those restrictions to be "so significantly prohibitive," the staff hearing officer was able to "think of no work [Storts] could perform other than work in a sheltered workshop, which is less than sedentary employment." *Id.*

{¶ 64} Though OneSource and the commission differ on the impact of Storts's nonmedical disability factors, including the staff hearing officer's findings regarding the vocational impact of the restrictions in Dr. Harris's report, this is not a basis for relief in mandamus. The weight to be given to the nonmedical factors "rests exclusively with the commission, which is considered to be the expert on [permanent total disability] matters." *Guthrie* at ¶ 8. *See State ex rel. Bonnlander v. Hamon*, 2017-Ohio-4003, ¶ 17 ("Evaluation of the weight and credibility of the evidence is left to the discretion of the commission within the context of each case."). The commission, as the ultimate evaluator of disability, performed its legal duty by weighing the evidence and evaluating both the medical and nonmedical factors to reach a conclusion regarding disability. *See generally State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92, 94 (1993). OneSource has not demonstrated the commission abused its discretion with regard to the nonmedical disability factors, including the staff hearing officer's consideration of psychological factors discussed in Dr. Harris's report.

{¶ 65} Third, OneSource argues the commission abused its discretion by granting permanent total disability compensation "without an analysis of [Mr. Storts's] failure to pursue vocational rehabilitation." (OneSource's Brief at 15.) OneSource argues that analysis of vocational rehabilitation was needed "so as to determine whether his lack of effort was due to lifestyle choice or due to disability relative to the allowed conditions." *Id.* at 16.

{¶ 66} Permanent total disability compensation is appropriately granted when the impairment from the employee's injury "prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop." R.C. 4123.58(C)(2). On the other hand, permanent total disability compensation may not be granted if "[t]he employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain." R.C. 4123.58(D)(4).

{¶ 67} Contrary to OneSource's contentions, the staff hearing officer's order, read as a whole, leaves no question regarding whether Storts had or could reasonably be expected to develop employment skills that would enable him to engage in sustained remunerative employment. With regard to the nonmedical disability factors, again, the staff hearing officer discussed Storts's education, noting that while Storts could read, write, and do basic math, Storts never completed high school or obtained his GED. Additionally, the staff hearing officer found Storts did not have any vocational or special training, had no computer skills other than related to entering information into a truck, and did not have a smart phone. Most importantly, considering the restrictions imposed by Dr. Harris, the staff hearing officer could "think of no work [Storts] could perform other than work in a sheltered workshop, which is less than sedentary employment." (Stip. at 208.)

{¶ 68} None of the staff hearing officer's findings raise a question regarding whether vocational rehabilitation would be of benefit to Storts. *Compare State ex rel. Walter v. Indus. Comm. of Ohio*, 2009-Ohio-5974, ¶ 4 (10th Dist.) (overruling objection to magistrate's decision finding that while "there was no evidence that relator could not benefit from vocational rehabilitation and relator never received any rehabilitation services . . . , because this evidence did not contradict any of the commission's findings, the commission did not have to address the rehabilitation efforts evidence in its decision"), *with State ex rel. Formica Corp. v. Indus. Comm. of Ohio*, 2011-Ohio-2484, ¶ 31 (10th

Dist.) (adopting magistrate's decision finding that because "there is vocational evidence in the record which would support the conclusion that claimant could perform less strenuous production work, cashiering, data entry and other related work activity, it was incumbent upon the commission to determine whether or not claimant could have developed skills or pursued other avenues to increase his potential to be reemployed"). Rather, read together, the staff hearing officer's findings make it apparent that Storts was prevented from engaging in sustained remunerative employment utilizing the employment skills he had or could reasonably be expected to develop. As there exists some evidence to support its findings, the commission was not required to issue any further explanation. *See Walter* at ¶ 4; *State ex rel. Deerfield Mfg. v. Taylor*, 2008-Ohio-2296, ¶ 47 (rejecting, through adopted magistrate's decision, employer's argument that it was error for the commission to fail to address claimant's rehabilitation efforts because the employer "offered no evidence showing that [the] claimant was capable of undergoing vocational rehabilitation").

{¶ 69} Fourth, OneSource argues the commission abused its discretion because it did not "sufficiently consider the effect and nature of Mr. Storts's retirement on his eligibility" for permanent total disability compensation. (OneSource's Brief at 17-18.) The commission responds that OneSource never raised the issue of voluntary retirement before the commission and asserts that this precludes relief on this question through mandamus.

{¶ 70} As noted above, permanent total disability compensation may not be awarded under R.C. 4123.58(D)(3) where the reason the employee is unable to engage in sustained remunerative employment is due to, among other reasons, the fact that the "employee retired or otherwise is not working for reasons unrelated to the allowed injury." *See* Adm.Code 4121-3-34(D)(1)(d). This court has previously addressed an employer's contention that the commission erred by awarding permanent total disability compensation without considering a claimant's alleged voluntary retirement. *See State ex rel. Columbus Distrib. Co. v. Reeves*, 2023-Ohio-898 (10th Dist.). *See also State ex rel. Navistar, Inc. v. Indus. Comm. of Ohio*, 2017-Ohio-8976, ¶ 23 (10th Dist.) (applying a former version of Adm.Code 4121-3-34(D)(1)(d) to find that absent clear and convincing proof that the employer raised the issue of voluntary retirement before the staff hearing officer, the employer cannot establish that the staff hearing officer's failure to address the issue constituted an abuse of discretion).

{¶ 71} In *Reeves*, the employer argued that "there was evidence in the file such that the [staff hearing officer] should have addressed whether [the claimant] was not working for reasons other than the allowed conditions." *Reeves* at ¶ 61. Through an adopted magistrate's decision, this court rejected the employer's arguments, stating:

> The record in this case lacks a transcript of proceedings before the [staff hearing officer], nor does it present any pretrial briefs or other pleadings that allow this court to conclude that "voluntary abandonment/not working for reasons other" was asserted as an affirmative defense and argued before the [staff hearing officer] in a manner that would have allowed Reeves to refute the proposition. The bare presence of evidence in the record of Reeves' application for [Social Security Disability Insurance] and his termination from employment does not suffice to show that the issue was raised in a manner that required the [staff hearing officer] to adjudicate it. The SHO did not commit an abuse of discretion in omitting discussion and conclusions on this question.

*Id.* at ¶ 65. Thus, because the employer failed to demonstrate that the issue was raised before the staff hearing officer, the court concluded that the staff hearing officer did not commit an abuse of discretion in omitting discussion and conclusions on the issue.

{¶ 72} As in *Reeves*, OneSource fails to present any evidence that it raised before the staff hearing officer the issue of voluntary retirement or that Storts was not working for reasons unrelated to the allowed injury. Though the staff hearing officer noted that Storts was receiving social security retirement benefits, this does not demonstrate that the issue of retirement under R.C. 4123.58(D)(3) was raised before the staff hearing officer. There is no transcript of the hearing before the staff hearing officer present in the record of this matter. *See State ex rel. Stevens v. Indus. Comm. of Ohio*, 2012-Ohio-4408, ¶ 11 (10th Dist.) (stating that the "relator, not the respondent, bears the burden to prove entitlement to mandamus relief, and a relator may not avoid that burden simply by noting the absence of a transcript"). Nor does the record contain any briefs submitted by the parties prior to the staff hearing officer's order awarding Storts permanent total disability compensation. Indeed, OneSource's request for reconsideration, in which OneSource asserted that reconsideration should have been granted due to three clear mistakes of fact, does not contain any arguments pertaining to voluntary retirement. Therefore, OneSource has failed to demonstrate the staff hearing officer committed an abuse of discretion by omitting discussion and conclusions on the issue of voluntary retirement. *See Reeves* at ¶ 65.

{¶ 73} Fifth, and finally, OneSource argues the commission abused its discretion by failing to "adequately explain the reason for its determination that age was a negative factor under *Stephenson*," with regard to the nonmedical disability factors. (OneSource's Brief at 19.) A closer reading of the staff hearing officer's order, however, reveals that the order contains sufficient analysis.

{¶ 74} With respect to vocational factors, Adm.Code 4121-3-34(B)(3) describes the analysis of age as follows: " 'Age' shall be determined at time of the adjudication of the application for permanent total disability. In general, age refers to one's chronological age and the extent to which one's age affects the ability to adapt to a new work situation and to do work in competition with others." The Supreme Court of Ohio has stated that "[i]t is not enough for the commission to just acknowledge claimant's age," but instead the commission "must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects." *State ex rel. Moss v. Indus. Comm. of Ohio*, 75 Ohio St.3d 414, 417 (1996).

{¶ 75} As discussed above, the staff hearing officer found Storts was 67 years of age at the time of the hearing and 68 at the time the order was issued. From this, the staff hearing officer found that Storts had "reached the life stage of advanced age, and many workers at this age have retired or are considering retirement." (Stip. at 208.) Moreover, the staff hearing officer analyzed Storts's education, work history, and restrictions based on his allowed psychological condition in conjunction with analysis of his age. *See Moss* at 417 ("A college degree, for example, can do much to ameliorate the effects of advanced age."). In particular, the staff hearing officer noted that Storts had worked as an over-the-road truck driver "for more than 45 years." (Stip. at 208.) Thus, the staff hearing officer's order contained sufficient discussion of age in conjunction with other factors. Though more explanation may have been helpful in understanding the staff hearing officer's reasoning, OneSource has not demonstrated the commission was under a clear legal duty to provide such additional explanation.

## D. Conclusion

{¶ 76} For the foregoing reasons, OneSource has failed to demonstrate a clear legal right to the requested relief or that the commission was under a clear legal duty to provide

it. Accordingly, it is the decision and recommendation of the magistrate that OneSource's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.